587 F.Supp. 1157 (1984)
James Jesse WEISS, Plaintiff,
v.
MISSOURI DEPARTMENT OF MENTAL HEALTH, Malcolm Bliss Mental Health Center, Kathleen D. Smith, Superintendent, Dr. M.T. Rajappa, Dr. Bun Tee Co, Jr., B. Steed, Odessa Long, J. Carter and D. Walker, and Unknown Nurses and Employees of Malcolm Bliss Mental Health Center, Defendants.
No. 82-496C (2).
United States District Court, E.D. Missouri, E.D.
March 29, 1984.
*1158 Eric K. Vickers, St. Louis, Mo. (appointed), for plaintiff.
JoAnn Leykam, Asst. Atty. Gen., Jefferson City, Mo., Ruth A. Przybeck, Asst. Atty. Gen., St. Louis, Mo., for defendants.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for a decision on the merits after trial to the Court.
Plaintiff brings this action under 42 U.S.C. § 1983 alleging that while he was a pre-trial detainee at Malcolm Bliss Health Center ("Malcolm Bliss") for the purpose of undergoing a psychiatric evaluation, he was physically restrained and forced to submit to both oral and intravenous injections of Thorazine (chlorpromazine) by defendants B. Steed, Odessa Long, J. Carter, D. Walker, and other unknown employees of Malcolm Bliss pursuant to the authorizations of defendants Kathleen Smith, Dr. M.T. Rajappa, and Dr. Bunn Tee Co, Jr. Plaintiff alleges that as a result of being given Thorazine, he became physically and mentally ill, could not stand, walk, sleep or eat properly, or function in his normal capacity during his stay at Malcolm Bliss. Further, plaintiff alleges that he has suffered recurring headaches and pain. Plaintiff seeks injunctive relief against all defendants and punitive damages against the individual defendants.
By order dated June 27, 1983, this Court dismissed on Eleventh Amendment grounds plaintiff's claims against defendants Missouri Department of Mental Health and Malcolm Bliss and plaintiff's claims for monetary relief against defendants Smith, Rajappa, Co, Steed, Long, Carter, Walker, and unknown nurses and employees of Malcolm Bliss in their official capacities. The Court also dismissed without prejudice prior to trial the remaining claims against defendants Rajappa and Walker because plaintiff had failed to obtain service of process upon them. See *1159 Local Rule 15 for the United States District Court, Eastern District of Missouri.
After consideration of the testimony adduced at trial, the exhibits and interrogatory answers submitted and received into evidence, the parties' stipulation of facts, the parties' briefs, and the applicable law, the Court hereby enters its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiff is a citizen of the United States and the State of Missouri and a resident of Jefferson City, Cole County, Missouri.
2. Malcolm Bliss is a facility operated by the Missouri Department of Mental Health in St. Louis, Missouri, for the care and treatment of the mentally ill. In 1979, pre-trial criminal defendants were also admitted to Malcolm Bliss for psychiatric evaluation in connection with their trials.
3. Defendant Kathleen Smith, M.D., was at all relevant times the Superintendent of Malcolm Bliss and was statutorily vested with certain duties with respect thereto. See Mo.Rev.Stat. § 630.040.
4. Defendant Bun Tee Co, Jr., M.D., was at all relevant times the Director of Forensic Service at Malcolm Bliss. As Director of Forensic Service, Dr. Co participates in the direct evaluation of pre-trial detainees, also known as forensic patients. He is responsible for insuring that such forensic patients are in fact evaluated and is further responsible for the Forensic Service Procedure Manual which contains the principal policies for handling forensic patients at Malcolm Bliss.
5. Defendant Barbara Steed was at all relevant times a Graduate Nurse IV at Malcolm Bliss. One of her duties includes the administration of medication to patients when such medication is ordered by a physician.
6. Defendant Odessa Long was at all relevant times a nurse at Malcolm Bliss.
7. Defendant Josephine Carter was at all relevant times a Psychiatric Aide II at Malcolm Bliss. As Psychiatric Aide II, she is a nurse's assistant and participates in direct patient care.
8. Plaintiff was a forensic patient at Malcolm Bliss from March 6, 1979, to March 29, 1979. As such, he was to receive psychiatric evaluation only in connection with the criminal charges pending against him.
9. Thorazine, also known as chlorpromazine, is a psychotropic drug used at Malcolm Bliss to calm patients and to control their agitation.
10. When plaintiff entered Malcolm Bliss on March 6, 1979, a staff physician, M.R. Rajappa, M.D., ordered 50 milligrams of Thorazine for plaintiff as needed for agitation. Dr. Rajappa later rewrote the same order on March 9 and March 16.
11. Nurses at Malcolm Bliss are authorized to administer medication to patients when a physician has so ordered, and under the conditions that the physician has specified in the order.
12. On March 18, 1979, at 8:15 a.m., plaintiff approached a nurse on duty, D. Walker, and indicated to her that he was nervous and that he desired to have "medicine for nerves." Plaintiff appeared agitated and, in accordance with the physician's orders, D. Walker gave plaintiff 50 mg. of Thorazine. Plaintiff voluntarily took the Thorazine by mouth.
13. At 10:30 a.m. on the same day, plaintiff became hostile and slammed a nurses' station window shut on the hand of another patient. He rushed behind the patient and violently stated to her, "Don't you ever accuse me of anything again." In slamming the window shut on a patient's hand and in directing threatening language to her, plaintiff appeared agitated and constituted a danger to others. Thus, D. Walker, in accordance with Dr. Rajappa's orders, administered 50 mg. of Thorazine to plaintiff by intramuscular injection.
14. After plaintiff's exhibited agitation on March 18, 1979, Dr. Rajappa rewrote his previous orders for plaintiff and increased *1160 the Thorazine dosage order to 100 mg. as needed for agitation.
15. On March 20, 1979, plaintiff approached B. Steed at 8:20 a.m. and indicated that he felt nervous and needed some medication. Plaintiff appeared mildly agitated. Thus, B. Steed gave plaintiff 100 mg. of Thorazine in accordance with Dr. Rajappa's order. Plaintiff voluntarily took the Thorazine by mouth.
16. The Court finds that plaintiff's testimony concerning other instances in which he was forcibly administered Thorazine not to be credible. Thus, the Court finds that plaintiff received Thorazine only on the three occasions indicated above.
17. Defendants Long and Carter never administered Thorazine to plaintiff.
18. At no time during his stay at Malcolm Bliss was plaintiff ever informed of any potential side effects of the use of Thorazine.
19. Headaches, insomnia, nightmares, and general pain are not recognized side effects of the use of Thorazine.
20. There is virtually no chance that a patient who received only three isolated doses of Thorazine, none greater than 100 mg., would incur any chronic side effects as a result thereof.
21. Plaintiff experienced headaches and insomnia at Malcolm Bliss before Thorazine was ever administered to him.
22. Plaintiff has not shown that the Thorazine administered to him while he was a forensic patient at Malcolm Bliss caused any of the injuries of which he complains in this action.
23. Malcolm Bliss neither presently has nor at any time relevant to this action did have any policy or practice of administering Thorazine to forensic patients without their consent absent an emergency situation. The Court finds that plaintiff's testimony and the depositions upon written questions of Donald Lee Trendley, Jr., Richard Lee Sanders, Raymond Vogt and Marty L. Luke introduced into evidence by plaintiff on this point are generally conclusory, do not contain sufficient factual foundation for the conclusions made and therefore are not credible.
24. Although Malcolm Bliss presently has a policy of informing forensic patients in non-emergency situations of the potential benefits, risks, effects, and side effects of medication prescribed for them, it did not have such a policy at the time plaintiff was a forensic patient at Malcolm Bliss. During the time plaintiff was a forensic patient at Malcolm Bliss, employees of Malcolm Bliss, on a doctor's order, occasionally administered Thorazine as needed for a specific purpose to forensic patients in non-emergency situations without informing them of the potential risks, effects, and side effects of Thorazine.

CONCLUSIONS OF LAW
This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331 and 1338.
The individual defendants assert that they are entitled to official immunity for the acts alleged in plaintiff's complaint. As a general rule, governmental officials performing discretionary functions are entitled to enjoy a qualified immunity from monetary liability while acting in their official capacities insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
Plaintiff does not dispute defendants' assertion that they are "governmental officials performing discretionary functions ... in their official capacities" within the meaning of Harlow. The Court's central focus, therefore, must be on plaintiff's assertion that defendants violated his clearly established constitutional rights when he was a forensic patient at Malcolm Bliss.
This Court has found that plaintiff was given Thorazine on three occasions while he was a forensic patient at Malcolm Bliss. On two of the occasions, plaintiff asked a nurse on duty for medicine for his nerves. Because plaintiff exhibited signs *1161 of agitation, the nurse gave plaintiff Thorazine in accordance with a doctor's order. Plaintiff voluntarily took the Thorazine by mouth. Plaintiff was not, however, advised of the potential side effects of Thorazine.
It is clear that employees of a mental hospital may administer a psychotropic drug such as Thorazine to a voluntary patient[1] with his informed consent. Cf., Davis v. Hubbard, 506 F.Supp. 915, 938 (N.D. Ohio 1980); Rogers v. Okin, 478 F.Supp. 1342, 1365-1368 (D.Mass.1979), aff'd in part, rev'd in part on other grounds, 634 F.2d 650 (1st Cir.1980), vacated and remanded on other grounds sub nom, Mills v. Rogers, 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982). The question presented in this case, however, is whether plaintiff had a clearly established constitutional right in March, 1979, to be informed of the potential side effects of Thorazine prior to it being given to him upon his request.
The parties have not cited, nor has the Court found, any case which has addressed this issue. Although the Davis and Rogers cases appear to indicate that "informed" consent is necessary, the Courts' use of the word "informed" in these cases is dicta since the plaintiffs in those cases did not consent to the medication at all.
Even if the Davis and Rogers cases established such a right, it would still be unclear whether the right was clearly established in March, 1979. The Rogers case was decided in October, 1979; Davis was decided in 1980. Although advising patients of the potential side effects of psychotropic drugs that are given to them upon request may have been a sound medical policy, this is far different than holding that such a policy was constitutionally required. Because the Court has found no case law establishing such a right nor any case law prior to March, 1979, from which such a right could be reasonably implied, the Court concludes that plaintiff had no clearly established right in March, 1979, to be informed of the potential side effects of Thorazine prior to voluntarily taking it.
The other occasion on which plaintiff was given Thorazine occurred on March 18, 1979. According to the credible testimony adduced at trial, plaintiff on that date had become hostile and slammed a nurses' station window shut on the hand of another patient. He then rushed behind the patient and made threatening remarks.
It is clear that a voluntary patient in a mental hospital who presents a danger to himself or others has no constitutional right to refuse medication. Rogers v. Okin, 634 F.2d 650, 656 (1st Cir.1980); Davis v. Hubbard, 506 F.Supp. at 934-35. See also Rennie v. Klein, 653 F.2d 836, 847-48 (3d Cir.1981). The Court has no hesitancy in concluding that plaintiff presented a danger to others on the occasion described above. Thus, defendants did not violate any "clearly established right" of plaintiff on this occasion.
Plaintiff argues in his trial brief that plaintiff had a constitutional right to have a hearing subsequent to the March 18 incident. In support of this proposition, plaintiff cites Davis v. Hubbard, supra. In Davis, however, the Court appeared to require a post-emergency hearing only when the patient was subjected to ongoing administration of psychotropic drugs. The purpose of such a hearing, the Davis court stated, was to determine whether the "patient may be treated against his will." Id. (Emphasis added.)
In this case, plaintiff was not subjected to ongoing treatment, but was given Thorazine on only three isolated occasions. Thus, Davis is clearly distinguishable.
Further, even if Davis can be read to establish a patient's right to a post-emergency hearing under the facts of the case sub judice, Davis was decided after plaintiff *1162 was released from Malcolm Bliss. This Court has found no case prior to Davis which established such a right. Thus, the Court concludes that such a right was not clearly established in March, 1979, and that defendants are therefore immune under Harlow for failing to provide such a hearing.
Assuming arguendo that plaintiff's constitutional rights were violated, plaintiff has not sustained his burden of proving that he suffered damages as a result of defendants' actions. See Rogers v. Okin, 478 F.Supp. at 1388. The uncontradicted medical testimony was that the problems plaintiff has experienced since his release from Malcolm Bliss are not recognized side effects of Thorazine. Further, the evidence indicates that isolated administration of Thorazine on only three occasions in the dosages prescribed and given here results in no chronic side effects. Additionally, plaintiff has offered no evidence that defendants Long and Carter were involved at all in administering Thorazine to him.
For the foregoing reasons, the Court finds that plaintiff has failed to show that any of the defendants violated his clearly established constitutional rights while he was a forensic patient at Malcolm Bliss or that he has suffered injury as a result of any actions of defendants. Therefore, the Court will enter judgment in favor of defendants on plaintiff's claim for compensatory and punitive damages.
Finally, because plaintiff is no longer a patient at Malcolm Bliss and has shown no substantial likelihood of ever returning to Malcolm Bliss, his claim for injunctive relief is moot. See Carson v. Pierce, 719 F.2d 931, 933 (8th Cir.1983); Watts v. Brewer, 588 F.2d 646, 648 (8th Cir.1978); Wycoff v. Brewer, 572 F.2d 1260, 1262 (8th Cir.1978); Willis v. Ciccone, 506 F.2d 1011, 1019 (8th Cir.1974). See also United States Parole Commission v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). The Court therefore need not decide whether the present policies of Malcolm Bliss with respect to administration of pyschotropic drugs to forensic patients are constitutionally permissible.
NOTES
[1] Plaintiff was a "voluntary" patient in the sense that he had not been deemed mentally incompetent and in the sense that he retained the right to terminate his evaluation at Malcolm Bliss upon his demand. Plaintiff was not, however, free to physically leave Malcolm Bliss as he was a pre-trial detainee in custody pending trial or other disposition of his case.