Daniel MEIS, Appellee/Cross–Appellant,

v.

Frank GUNTER, Gary Grammer, Harold Clarke, John Shaw, Mario Peart, Charles Hohenstein, Max Merritt, Richard Knight and certain other Nebraska State Penitentiary security personnel with the rank of Sergeant and above whose names are currently unknown, all in their official and individual capacities, Appellants/Cross–Appellees.

Nos. 88–2841, 89–1207.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1989.

Decided June 26, 1990.

Rehearing and Rehearing En Banc Denied Sept. 10, 1990.

Susan M. Ugai, Lincoln, Neb., for appellee/cross-appellant.

Kay E. Tracy, Grand Island, Neb., for appellants/cross-appellees.

Before ARNOLD and MAGILL, Circuit Judges, and LARSON,* Senior District Judge.

ARNOLD, Circuit Judge.

Daniel Meis, while an inmate at the Nebraska State Penitentiary,[1] brought this civil-rights action for money damages and injunctive relief, pursuant to 42 U.S.C. § 1983, against the Director of the Nebraska Department of Correctional Services and other prison officials. In his complaint, Meis claimed that his constitutional right to due process had been infringed because inmates are not allowed access to all administrative regulations, operational memoranda, and other documents that contain standards of conduct to which inmates must conform. The District Court determined that Meis's constitutional rights had been violated, and held that inmates are entitled to access to some, though not all, institutional documents. No damages were

---

* The Hon. Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. At the time of this appeal, Meis was imprisoned in Wyoming under an interstate compact, but was subject to return to the Nebraska Department of Corrections at any time.

awarded, but the defendants were ordered to pay costs and attorney's fees. Both sides appeal. On defendants' cross-appeal, we vacate the judgment of the District Court. Meis has not shown that he himself has ever actually been injured by the lack of access that he complains about, nor has he proved that there is any ascertainable likelihood that he will be harmed in such a way in the future. He therefore lacks standing to make a due-process argument based on lack of access to the documents. (This is not a class action.) On Meis's appeal, which relates to institutional documents describing programs and opportunities available to inmates, the judgment will be affirmed.

## I.

This case is about various kinds of documents that govern the Nebraska Department of Correctional Services. There are, first of all, Rules and Regulations of the Department, issued pursuant to the Nebraska Administrative Procedures Act, Neb.Rev.Stat. § 84–901 et seq. (Reissue 1987). It is undisputed that Meis and every other inmate was given a copy of these Rules and Regulations upon entry into the state penal system. At issue in this case are three other kinds of documents: administrative regulations, operational memoranda, and "Now Hear This" memoranda. Administrative regulations ("ARs") are issued by the Director of the Nebraska Department of Correctional Services, and concern the operations of all correctional institutions within the Nebraska prison system. Operational memoranda ("OMs") are issued by the chief executive officer of each prison. The OMs involved in this case were issued by the Warden of the Nebraska State Penitentiary, and concern policies specific to that institution. "Now Hear This" memoranda ("NHTs") are documents circulated by prison officials other than the Director of the Department or the Warden of the Nebraska State Penitentiary. NHTs reflect policies of individual housing units, identify programs and opportunities available to inmates, and set forth criteria used to determine eligibility for those programs and opportunities.

Some ARs, OMs, and NHTs are available to inmates in the prison library. Others are not. Defendants claim that they have made available to inmates all the ARs, OMs, and NHTs that they need to see, and that those documents not made available relate, for example, to institutional security, employee personnel policies, or other subjects of no immediate concern to individual inmates. Meis argues, however, that not all relevant documents are placed in the prison library. He claims that in some instances disciplinary proceedings may be instituted against inmates based upon the contents of an AR, an OM, or an NHT of which inmates had no previous knowledge. In such cases, he argues, due process requires that the inmate charged with a disciplinary offense be given notice in writing of the relevant AR, OM, or NHT.

According to Rule 5 of the Inmate Handbook, a copy of which is issued to every inmate, inmates may be punished only if found guilty of violating a standard of conduct identified in the Code of Offenses. The Handbook contains a copy of the Code of Offenses. The District Court found, however, and we agree, that it is possible for an inmate to be punished on account of conduct that is not completely described in the Code. Under Rule 5(5)II(E), for example, an inmate may be disciplined for "[d]isobeying any verbal or written order or instruction from any employee, or refusing immediately to comply with such direct order." The Code of Offenses itself does not purport to describe the full range of activities of inmates that might be subject to such verbal or written orders. The Code, for example, does not state that an inmate must make up his bed every morning, but disciplinary proceedings have been instituted against inmates who refused to obey a direct verbal order to make up their beds.

In some instances, ARs, OMs, or NHTs themselves are used as "direct written orders" within the meaning of Rule 5(5)II(E). The District Court held that due process requires that an AR, an OM, or an NHT used in this way be provided in ad-

vance to an inmate, if he is to be subjected to disciplinary proceedings. "In advance," in this context, means in advance of a claimed violation. In the abstract, we have no quarrel with such a proposition. If, for example, an OM makes it an offense for an inmate to have in his cell more than three books, and if an inmate, not knowing of the OM, has four books in his cell, and if an officer, upon discovering the four books, institutes disciplinary proceedings against the inmate without first informing him of the three-book limit and giving him a chance to get rid of the fourth book, obvious problems of due process arise. There has been no fair notice of what is prohibited. The difficulty, so far as the present case is concerned, is that the proposition is a complete abstraction. Nothing of the kind has ever happened to Meis. He has been subjected to seven disciplinary proceedings. In four of the cases, verbal orders were involved, and he was given clear advance notice and at least one chance to conform his conduct to the order before any disciplinary proceeding was commenced. In three other cases, no such place of repentance, apparently, was afforded, but Meis admitted his guilt on each of the three occasions. He was, for example, cited for failure to work. He was given written notice of the charge and received 20 hours of extra duty as a punishment. He had, however, admitted his guilt. No suggestion is made that on any of the occasions the rules violated were invalid, and Meis did not claim, in any of these disciplinary proceedings, that he was entitled to any kind of documentation in order to allow him to set up a defense of lack of notice.

It is perfectly true, see *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), that inmates have some procedural rights in connection with disciplinary proceedings. They have a right, for example, to be notified in advance of the disciplinary hearing of the nature of the claimed violation. Meis does not argue that he was not fully accorded this right. They also have a right to reasonable access to information necessary to put on a defense, including prison documents, if there are any,

which might show that the order or regulation underlying the claimed violation is invalid. Again, we have no quarrel with the District Court's action in the abstract. It required, paragraph 2(b) of the judgment entered November 14, 1988, that documents that are the source of an officer's authority be readily available to an inmate a reasonable time before a disciplinary hearing on a charge against the inmate for violating a direct oral order given by the officer. Again, however, this proposition of law is disembodied—it is not concretely raised by the present record. There is no showing that Meis, in an attempt to defend himself in a disciplinary proceeding, ever requested an AR, an OM, or an NHT that defendants refused to give him. In the future, if Meis is re-transferred to the Nebraska State Penitentiary, and if a disciplinary proceeding is commenced against him, and if he requests, in order to mount a defense, a particular AR, OM, or NHT, he may well be constitutionally entitled to it, but we have no reason to believe that his request will be refused.

Article III of the Constitution requires that a plaintiff requesting relief show that he has suffered harm, or that harm is threatened or imminent. This requirement has not been met in the present case. Meis's claims about documents relating to disciplinary offenses do not therefore raise a justiciable issue. Such an issue may be raised in the future, and in that event the analysis contained in the District Court's opinion may be helpful, but we sit to decide only concrete cases and controversies. In order to secure an adjudication from a federal court, a "plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as a result of the challenged official conduct, and the injury or threat of injury must be both 'real and immediate,' not 'conjectural or hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983), quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The present record does not meet this requirement. Possibly other inmates have suffered injuries of a

similar nature, but Meis has no standing to raise claims on behalf of them.

## II.

■ On his cross-appeal, Meis argues that the District Court erred in rejecting his claim that he has a constitutional right to various documents, including certain NHTs, that set out programs and opportunities available to inmates and the criteria for their eligibility. These programs include clubs, academic courses, vocational training, religious services, counseling, athletics, community-group involvement, and rehabilitation opportunities for inmates. We agree with the District Court that the Due Process Clause of the Fourteenth Amendment does not, of its own force, give inmates a constitutional right to this kind of information. The Constitution does not itself require, for example, that Congress, when it enacts entitlement or public-welfare programs, take steps to see that the programs become actually known to their intended beneficiaries. Of course such steps are normally taken in practice, and this represents wise policy, but legislation, once enacted, is effective immediately, and it is not unconstitutional to put on the citizen the burden of learning about it. By the same token, we do not believe that the Constitution requires prison authorities, once they have established programs for the benefit of inmates, to distribute to the inmates the actual documents establishing those programs and specifying who shall be eligible to take part in them. Again, we have no doubt that such information is, in some form, commonly distributed, and that this represents wise policy, but putting the initial burden on an inmate to inquire of someone in authority whether he is eligible, say, for a certain kind of rehabilitation is not so fundamentally unfair as to violate the Due Process Clause.

■ Meis also argues that there is a state-created property or liberty interest here. He points to Neb.Rev.Stat. § 83–4,112(2) (Reissue 1987), which provides in pertinent part as follows:

Committed persons shall be informed of rules and policies concerning ... inmate rights and developmental opportunities, work or education programs, and complaint procedures. Such rules and policies, or significant portions thereof, shall be posted at conspicuous places throughout the institution.

Meis does not allege that this statute has been violated. As far as we know, defendants have complied with it. Meis's point, rather, appears to be that the documents themselves, the NHTs, pertaining to the rights and opportunities and programs mentioned, must be made available to inmates. We disagree. The state statute establishes a certain mode of conveying the information in question, and the federal Constitution does not require that another mode, though arguably more effective, be used.

Furthermore, this is not the kind of state statute that would create a liberty interest as that term has come to be used in Fourteenth Amendment jurisprudence. The terms liberty interest and property interest are used in the context of procedural-due-process claims. Thus, if the state says that an inmate is entitled to be paroled if certain substantive factual predicates are established, the inmate has a liberty interest in parole, and it cannot be denied until some appropriate sort of hearing has been held at which the inmate will be allowed to show that the requisite factual predicates exist. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). It is commonly said that no liberty interest of this kind is created unless the state statute or regulation involved uses mandatory language and imposes substantive limits on the discretion of state officials. *Dace v. Mickelson*, 816 F.2d 1277 (8th Cir.1987) (en banc). The statute quoted above certainly uses mandatory language, but it does not create a certain right or entitlement subject to specified factual findings. Rather, it is a direct command that certain information be conveyed. There is no question here of procedural due process. It is not claimed, for example, that Meis was entitled to some sort of hearing before the defendants decided not to deliver to him the NHTs he

claims he has a right to. Instead, the state statute requires unconditionally that information with respect to the programs in question be given to all committed persons. A duty is imposed on prison authorities, and a concomitant right is created in the inmates.

This is the language of substance, not procedure, and the concepts of liberty and property interests are, as we have noted, useful solely in the context of procedural due process. If we were to hold that the sort of state statute involved here created a liberty interest for federal constitutional purposes, we would be greatly expanding the doctrine of substantive due process. We would be holding, in effect, every state statute which imposes a mandatory duty, or creates a legal right, is constitutional in nature, and the violation of every such statute would be a violation of the Due Process Clause of the Fourteenth Amendment. This is emphatically not the law. Many important rights and duties are created by state law entirely without regard to the federal Constitution. A violation of state law, without more, is not the equivalent of a violation of the Fourteenth Amendment. *E.g., Snowden v. Hughes,* 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944).

For these reasons, we agree with the District Court's rejection of Meis's claim on this part of the case, and to this extent the judgment of the District Court will be affirmed.

### III.

In sum, we vacate those portions of the District Court's judgment requiring that certain documents be delivered to Meis. We affirm those portions of the judgment rejecting Meis's claim that he is entitled to documents describing programs for inmates within the prison. The case will be remanded for entry of judgment accordingly. As a consequence, Meis appears no longer to be the prevailing party, and the District Court should reconsider its award of attorney's fees and costs.

It is so ordered.

LARSON, Senior District Judge, concurring and dissenting.

I agree with the majority that Meis has no constitutional right to the specific documents he seeks which explain prison programs. I respectfully dissent from the majority's holding that Meis has no standing to request access to other documents maintained by Nebraska state prison authorities which set rules of behavior for prisoners and which authorize prison officials to give orders which inmates must follow. I believe Meis has shown more than an abstract interest in these documents, *see Ramer v. Saxbe,* 522 F.2d 695, 700–03 (D.C. Cir.1975), and I would affirm the District Court's opinion in all respects.