Hughes Anderson BAGLEY, Jr.,
Appellee/Cross–Appellant,

v.

Russell ROGERSON and Patsy Bozarth,
Appellants/Cross–Appellees.

Nos. 92–3245NI, 92–3343NI.

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1993.

Decided Sept. 20, 1993.

Rehearing and Suggestion for
Rehearing En Banc Denied
Nov. 16, 1993.

---

Susie Berregaard Thomas, Des Moines, IA, for appellants.

Andrew T. Orr, Sioux City, IA, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON and FAGG, Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

Iowa prison officials Russell Rogerson and Patsy Bozarth appeal from an order of the District Court denying their motion for summary judgment on their defense of qualified immunity. We reverse. We take this occasion to emphasize again that an allegation of a violation of state law, statutory or decisional, does not, in itself, state a claim under the federal Constitution or 42 U.S.C. § 1983.

I.

This appeal arises from a Section 1983 action filed by Hughes Anderson Bagley, Jr. In 1977 and 1979, Bagley was convicted of various federal drug and firearms charges in the Western District of Washington. After serving thirty-nine months of his sentence, in January 1984, he was transferred to the State of Iowa to face drug charges. In December 1984, Bagley was sentenced to five years in prison on these state charges. After sentencing, he was returned to federal custody in the Northern District of Iowa because of additional firearms charges. In December 1985, he was acquitted of those charges and returned to state custody. In January 1986, Bagley was released on bond from state custody pending appeal of his state conviction. However, as a result of a federal detainer, Bagley was then returned to federal custody to serve the remainder of his federal sentences from the Western District of Washington. Later, his state conviction was affirmed.

In September 1986, the Ninth Circuit reversed Bagley's 1977 drug conviction. *Bagley v. Lumpkin*, 798 F.2d 1297 (9th Cir.1986). In October 1986, Bagley wrote to the Iowa prison inquiring whether it had a policy on the "void sentence doctrine." Bagley explained he believed he was entitled to credit against his state sentence for the time he had served on the federal sentence that had been vacated. In January 1988, the Ninth Circuit reversed all but one of Bagley's 1979 firearms convictions. *United States v. Bagley*, 837 F.2d 371 (9th Cir.), *cert. denied*, 488 U.S. 924, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988). Bagley had by that time served his sentence on the remaining count. However, he remained in federal custody, in the Northern District of Iowa, because of yet other federal charges.

On February 8, 1988, Iowa prison officials lodged a detainer against Bagley, to ensure that he would be returned to their custody, whenever his federal confinement should cease, in order to serve the remainder of his 1984 Iowa drug sentence. On April 15, 1988, Bagley wrote to Iowa officials demanding credit against his state sentence for the time he had served on the vacated federal convic-

tions. If this credit were given, Bagley's state sentence would be fully satisfied, and the state detainer would have to be withdrawn. State officials did not grant this request at once. But on May 23, 1988, they agreed to settle a state-court suit brought by Bagley by giving him the credit in question. As a consequence, the state sentence was treated as fully satisfied, and the state detainer was withdrawn on June 1. On June 16, 1988, the federal court released Bagley on bail. About a month later, the federal charges were dismissed.

Bagley then filed this Section 1983 action for damages against the defendants, two Iowa prison officials, alleging that by lodging the detainer they deprived him of liberty without due process of law. Absent the detainer, Bagley claimed, the federal court would have admitted him to bail earlier. Both sides moved for summary judgment. Bagley argued that the detainer was unlawful because at the time it was lodged he had satisfied his state sentence. He claimed the officials should have credited him with the time he had served on the vacated federal convictions. The officials argued that Bagley was not entitled to the credit because of Iowa Code § 903A.5, which provides that "[a]n inmate shall not receive credit ... for time served in an institution or jail of another jurisdiction during any period of time the person is receiving credit upon a sentence of that other jurisdiction." Moreover, the officials argued that Bagley had failed to state a claim under Section 1983 and, at most, had alleged a violation of state law. They also argued that they were entitled to qualified immunity. The District Court denied the officials' motion for summary judgment, and this appeal followed.

II.

An immediate appeal lies from an order denying a claim of qualified immunity. See *Duckworth v. Ford*, 995 F.2d 858, 861 (8th Cir.1993). On such an appeal, it is appropriate for us to decide whether the complaint states a claim at all. "[T]he threshold question in analyzing a qualified immunity claim is whether the plaintiff has alleged a violation of a constitutional right."

*Cole v. Bone,* 993 F.2d 1328, 1332 (8th Cir. 1993) (citing *Siegert v. Gilley,* 500 U.S. 226, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)).

▪ The parties spend a great deal of time arguing about the meaning of Iowa Code § 903A.5. Bagley spent a certain amount of time in federal custody serving sentences that were ultimately reversed. While serving this time, was he "receiving credit upon" these federal sentences? The defendants argue that while Bagley was serving the time, and before his appeals were decided, federal officials were crediting him for this service. If the convictions had stood up, the time that Bagley had served would have counted towards satisfaction of his sentences. Bagley argues, on the other hand, that an illegal sentence, a sentence that never should have been imposed to begin with, a sentence that was, in the end, reversed, is not a sentence upon which one can receive credit. His time in federal custody did not give him credit for anything. Under the Iowa statute, credit against an Iowa sentence is not given for service in another jurisdiction if the prisoner is receiving credit for that service against a sentence of that other jurisdiction. The District Court agreed with Bagley. It held that he received no credit, within the meaning of Iowa Code § 903A.5, for time spent in federal custody as a result of the reversed sentences. Therefore, under the statute, at least by negative implication, Iowa owed Bagley credit for this time.

▪ We have no reason to quarrel with the District Court's interpretation of the state statute, an interpretation which, as it happens, is entirely consistent with the interpretation given by the state court in which Bagley's suit, later settled, was filed. We assume for present purposes that the state statute did require that Bagley be given the credit he requested. It is fundamental, however, that this does not amount to a Section 1983 claim. We have held several times that a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983. See, *e.g., Meis v. Gunter,* 906 F.2d 364, 369 (8th Cir.1990), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 682, 112 L.Ed.2d 673 (1991).

▪ There is a body of law, to be sure, holding that state law may create a "liberty interest" protected by the Fourteenth Amendment. If, for example, a state statute gives "specific directives to the decision maker that if the [statute's] substantive predicates are present, a particular outcome must follow," a "liberty interest" protected by the Fourteenth Amendment is created. *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989). As we explained in *Meis v. Gunter, supra,* however, this language is meaningful only in the context of procedural-due-process claims. If a state law gives me the right to a certain outcome in the event of the occurrence of certain facts, I have a right, by virtue of the Fourteenth Amendment, to whatever process is due in connection with the determination of whether those facts exist. This is not at all the same thing as saying that the federal Constitution guarantees me all rights created or conferred upon me by state law. Such a doctrine would turn every state-law violation into a substantive-due-process claim, a result that would obliterate completely the distinction between state law and the federal Constitution. As we said in *Meis v. Gunter, supra,* 906 F.2d at 368–69:

Furthermore, this is not the kind of state statute that would create a liberty interest as that term has come to be used in Fourteenth Amendment jurisprudence. The terms liberty interest and property interest are used in the context of procedural-due-process claims. Thus, if the state says that an inmate is entitled to be paroled if certain substantive factual predicates are established, the inmate has a liberty interest in parole, and it cannot be denied until some appropriate sort of hearing has been held at which the inmate will be allowed to show that the requisite factual predicates exist. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). It is commonly said that no liberty interest of this kind is created unless the state statute or regulation involved uses mandatory language and imposes substantive limits on the discretion of state

officials. *Dace v. Mickelson*, 816 F.2d 1277 (8th Cir.1987) (en banc). The statute [involved here] certainly uses mandatory language, but it does not create a certain right or entitlement subject to specified factual findings. Rather, it is a direct command that certain [action be taken]. There is no question here of procedural due process. It is not claimed, for example, that Meis was entitled to some sort of hearing before the defendants decided not to deliver to him the [items] he claims he has a right to. Instead, the state statute requires unconditionally that information with respect to the programs in question be given to all committed persons. A duty is imposed on prison authorities, and a concomitant right is created in the inmates.

This is the language of substance, not procedure, and the concepts of liberty and property interests are, as we have noted, useful solely in the context of procedural due process. If we were to hold that the sort of state statute involved here created a liberty interest for federal constitutional purposes, we would be greatly expanding the doctrine of substantive due process. We would be holding, in effect, every state statute which imposes a mandatory duty, or creates a legal right, is constitutional in nature, and the violation of every such statute would be a violation of the Due Process Clause of the Fourteenth Amendment. This is emphatically not the law. Many important rights and duties are created by state law entirely without regard to the federal Constitution. A violation of state law, without more, is not the equivalent of a violation of the Fourteenth Amendment. *E.g., Snowden v. Hughes*, 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944).

■ Accordingly, whatever the proper interpretation of Iowa Code § 903A.5 may be, the defendants, if they did violate that statute in not giving Bagley his credit sooner, did not thereby *ipso facto* subject themselves to an action under Section 1983. And what is true of state statutory law is equally true of state decisional law. Bagley's reliance upon certain state-court cases avails him no more than his citation of Iowa Code § 903A.5.

State law, whether statutory or decisional, is not the equivalent of the federal Constitution. If state law is violated and a person is injured thereby, he or she may well have an action for damages under state law, and such an action might come within the original jurisdiction of the federal district courts, even in the absence of diversity of citizenship, as pendent to a Section 1983 claim, but that is another matter entirely. We note, in passing, that Bagley has never pleaded such a pendent state-law claim.

### III.

■ Bagley does have another string to his bow. He claims that federal law, sometimes referred to as the "void sentence doctrine," required Iowa to give him credit for the time he was forced to spend unlawfully in federal custody. Such a claim, of course, would be good whatever state statutes might say. The issue is whether as a matter of federal constitutional law Bagley was entitled to receive credit on his Iowa sentence for time served on his vacated federal sentences. In *Harkins v. Wyrick*, 589 F.2d 387, 391 (8th Cir.1979), this Court did state that fundamental fairness "require[d] the Government to remedy the injustice imposed upon a prisoner who could have been serving an existing sentence were he not detained on an invalid sentence[,]" but this statement was dictum. More importantly, in *Holscher v. Young*, 440 F.2d 1283, 1290 (8th Cir.1971), we held that "[d]ue process does not require that [an inmate] be credited with the time spent in prison under [a] prior illegal conviction" for an unrelated crime.

The cases cited in support of the *Harkins* dictum were from other circuits and generally concerned consecutive sentences within the same jurisdiction. In *Miller v. Cox*, 443 F.2d 1019, 1020–21 (4th Cir.1971), the Court explained that in such a circumstance "all that was involved was an adjustment of the administrative records of the prison authorities so that service on the remaining valid sentence would commence at an earlier date." The Court believed that "the state should not ignore the period of imprisonment under the invalid sentence when an appropri-

ate remedy is so readily available." *Id.* at 1021.

In contrast, federal courts have found no due-process violation from a denial of federal credit for time served on a vacated state sentence, even when service of the state sentence delayed the start of a federal sentence. In *Pinaud v. James*, 851 F.2d 27 (2d Cir. 1988), the Court noted that federal courts had held that "state prisoners whose state sentences have been vacated [were] not entitled to credit on unrelated federal sentences." *Id.* at 31 (citing, *e.g.*, *Scott v. United States*, 434 F.2d 11, 21 (5th Cir.1970); *Green v. United States*, 334 F.2d 733, 736 (1st Cir.1964), *cert. denied*, 380 U.S. 980, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965)); see also *Meagher v. Clark*, 943 F.2d 1277, 1280 (11th Cir.1991). The Second Circuit also emphasized that "the state and the United States are separate sovereigns." *Pinaud v. James*, 851 F.2d at 32.

■ In the alternative, Bagley argues that even if he was not entitled to credit for the time served on the vacated federal sentences, he has stated a failure-to-investigate claim under Section 1983. He relies on *Alexander v. Perrill*, 916 F.2d 1392, 1399 & n. 13 (9th Cir.1990), holding that a prison official's failure to investigate a claim of computational error concerning foreign jail credits gave rise to liability in a *Bivens* [1] action, even if the failure did not result in injury. Assuming for present purposes that *Alexander* would be good law in this Circuit, we believe it would not apply in the present situation. There was nothing to "investigate" here. There were no facts in dispute, simply a legal claim by Bagley that he was entitled to credit, a claim that was rejected by the defendant state prison officials until Bagley sued them in a state court and obtained his credit by way of a settlement. So far as the federal Constitution is concerned, at least, the state officials were correct in rejecting Bagley's position. The state officials took a certain position, neither malicious nor unreasonable

on its face, Bagley took them to court, and they then settled the case. We see no deprivation of due process here.

In short, the federal Constitution did not require the State of Iowa, or the two prison officials whom Bagley has named as defendants in this action, to grant Bagley credit on a state sentence on account of legal errors made by the federal district court that had sentenced him on federal convictions that were later reversed on appeal. If an injustice has been done, it has been done by the United States, not by the State of Iowa. *State v. Farley*, 315 N.W.2d 817 (Iowa 1982), provides a close analogy. There, the Iowa Supreme Court denied credit for time served on a vacated South Dakota conviction. The Court stated: "Iowa had nothing to do with [the] South Dakota incarceration." *Id.* at 818. See also *Bennett v. Hollowell*, 203 Iowa 352, 212 N.W. 701 (1927), holding that an inmate is entitled to credit on a consecutive sentence for time served on a vacated sentence, where both sentences had been imposed by Iowa authorities.

### IV.

Bagley's complaint failed to state a claim for relief under the Due Process Clause of the Fourteenth Amendment. The judgment of the District Court is therefore reversed, and this cause is remanded to that Court with instructions to dismiss the complaint for failure to state a claim.

It is so ordered.[2]

---

**1.** *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**2.** The issues raised on Bagley's cross-appeal relate solely to the defense of qualified immunity.

Because we have held that the complaint failed to state a claim, it is not necessary to reach this defense or questions related to it. The cross-appeal is therefore dismissed as moot.