**Linda Renee BONDS, Appellant,**

v.

**MISSOURI DEPARTMENT OF MENTAL HEALTH, et al., Respondents.**

**No. WD 48919.**

Missouri Court of Appeals, Western District.

Oct. 4, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 29, 1994.

---

Michael H. Finkelstein, Kevin A. Thompson, Missouri Protection & Advocacy Services, Inc., Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondents.

Before ELLIS, P.J., and BERREY and SMART, JJ.

ELLIS, Presiding Judge.

Linda Renee Bonds appeals the trial court's decision dismissing her petition for failure to state a claim upon which relief could be granted. Bonds was confined to the Biggs Forensic Center at Fulton State Hospital for psychiatric evaluation prior to standing trial for the first degree murder of her minor daughter. On the morning of February 24, 1991, Bonds was placed in "seclusion" by Dr. Hor, a staff physician, after becoming hostile and physically aggressive with members of the hospital staff. "Seclusion" is similar to solitary confinement in penal institutions and requires a physician's order. Dr. Richard Bowers, another staff doctor, continued Bonds' seclusion after reviewing her status on the 25th, 26th, 27th and 28th of February. Bonds was released from seclusion on the morning of February 28 after a meeting of her treatment team.

In response to her seclusion, Bonds brought this action for declaratory and injunctive relief as well as monetary damages in the Circuit Court of Cole County. The Department of Mental Health, the Director of the Department, Keith Schafer, and Dr. Bowers were named as defendants. After considerable discovery, Bonds moved for partial summary judgment and Respondents filed a cross-motion for summary judgment on October 26, 1993. On December 1, 1993, the trial court dismissed the case for "failure to state grounds upon which relief can be granted." We affirm.

Count I of Bonds' petition claimed that Respondents violated § 630.175, RSMo 1986,[1] by placing her in seclusion for improper reasons and that this violation deprived her of her "liberty rights" as well as causing mental harm. Count II alleged the Respondents did not provide an impartial review of her allegations of improper seclusion in violation of § 630.115 and this was a deprivation of her "substantive right to specified procedural protection of statutory rights" and caused her to suffer mental harm. In Count III, Bonds asserted that Dr. Bowers intentionally deprived her of her liberty without due process of law in violation of her constitutional rights and civil rights under 42 U.S.C. § 1983 (1988).

As a preliminary matter, in order to determine the proper standard of review, it is necessary to determine whether the trial court dismissed the petition on the pleadings only or if the dismissal was a grant of summary judgment. Although the court stated it was dismissing the case for failure to state a claim, that ground for dismissal was included in Respondents' cross-motion for summary judgment. The trial court was presented with depositions, affidavits, and other documentary evidence with that cross-motion. Only those matters appearing on the face of the petition can be considered in a motion to dismiss for failure to state a claim. *Empiregas, Inc. v. Hoover Ball & Bearing Co.*, 507 S.W.2d 657, 660 & n. 4 (Mo.1974); *Feinstein v. Edward Livingston & Sons, Inc.*, 457 S.W.2d 789, 792 (Mo.1970). When matters outside the pleadings are presented by both parties and not excluded by the trial court, a motion to dismiss a pleading for failure to state a claim upon which relief can be granted is to be treated as one for summary judgment. Rule 55.27(a); *Black Leaf Prods.*

1. All statutory references are to Revised Missouri Statutes 1986 unless otherwise indicated.

*Co. v. Chemsico, Inc.*, 678 S.W.2d 827, 829 (Mo.App.1984). Thus, even if the cross-motion could be considered a motion to dismiss, the presentation of materials outside the pleadings by both parties automatically converted it into a motion for summary judgment. *Howard v. Armontrout*, 729 S.W.2d 547, 548 (Mo.App.1987); *Geary v. Missouri State Employees' Retirement Sys.*, 878 S.W.2d 918, 921 (Mo.App.1994).

■ We therefore review the trial court's order under the summary judgment standard of review. "Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law. *Id.*

> When reviewing the entry of summary judgment, we view the evidentiary record in the light most favorable to the party against whom summary judgment was granted, determine if any genuine issue of fact exists which would require a trial, and determine if the judgment is correct as a matter of law. We will affirm if the judgment is sustainable as a matter of law under any theory.

*State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886 (Mo.App.1993) (citations omitted); Rule 74.04(c). A genuine issue of fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382.

■ Although Counts I and II of Bonds' petition contain no explicit reference to 42 U.S.C. § 1983, Bonds claims, and we will assume for the purpose of analysis, that both of these counts alleged violations of her civil rights under § 1983. "Section 1983 does not create a federal cause of action for every injury caused by official action. Rather, section 1983 provides a federal remedy only for actions taken under color of state law, that deprive citizens of their federal constitutional

or statutory rights." *Avenson v. Zegart*, 577 F.Supp. 958, 961 (D.Minn.1984) (citations omitted). A claim of violation of a state law, even if true, is not equivalent to a violation of federal constitutional rights to due process of law. *Johnson v. Clinton*, 763 F.2d 326, 327 (8th Cir.1985). However, state law or regulations can create a constitutionally protected liberty interest. *Williams v. Armontrout*, 852 F.2d 377, 379 (8th Cir.), *cert. denied*, 488 U.S. 996, 109 S.Ct. 564, 102 L.Ed.2d 589 (1988). Such an interest is deemed created if (1) the statute contains particularized substantive standards or criteria that significantly guide decisionmakers; and (2) the statute uses mandatory language requiring the decisionmakers to act in a certain way. *Id.* Put another way, a statute which creates a protected liberty interest is one which creates a certain right or entitlement imposing substantive limits on the discretion of state officials and is subject to specified factual findings. *See Meis v. Gunter*, 906 F.2d 364, 368 (8th Cir.1990) (finding no constitutionally protected liberty interest in a Nebraska statute which required committed persons be informed of the rules and policies related to their institutionalization), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 682, 112 L.Ed.2d 673 (1991).

Section 630.175, which is the basis for Count I, provides in pertinent part:

> 1. No patient, resident or client of a residential facility or day program operated, funded or licensed by the department shall be subject to physical or chemical restraint, isolation or seclusion unless it is determined by the head of the facility or the attending licensed physician to be necessary to protect the patient, resident, client or others....

> 3. Physical or chemical restraint, isolation or seclusion shall not be considered standard treatment or habilitation and shall cease as soon as the circumstances causing the need for such action have ended.

Section 630.115.2, which is the basis for Count II, states:

> Notwithstanding any other sections of the chapter, each patient, resident or client shall have the right to an impartial review

of alleged violations of the rights assured under this chapter.

Bonds places significant emphasis on the fact that both statutes use the word "shall" and that § 630.115.2 specifically states a patient "shall have the right" as evidence of the mandatory nature of the statutes. However, this terminology is not necessarily determinative of the legislature's intention as to whether the statute is mandatory or directive. In *State v. Ciarleglio*, 807 S.W.2d 100 (Mo.App.1990), the court stated:

In determining whether a statute is mandatory or directory, the general rule is that when a statute provides what results shall follow a failure to comply with its terms, it is mandatory and must be obeyed; however, if it merely requires certain things to be done and nowhere prescribes results that follow such a statute is merely directory.

*Id.* at 104 (quoting *State v. Conz*, 756 S.W.2d 543, 546 (Mo.App.1988)).

 Applying this standard to §§ 630.175 and 630.115.2, it is clear that neither create a constitutionally protected liberty interest. Although the language in § 630.175 sets out guidelines for the restraint of patients, the decision whether such restraint is needed, or needs to continue, is left to the discretion of the staff physicians. All that is required is that the head of the facility or attending physician decide that use of seclusion is "necessary" for the protection of the patient or others. Requiring a determination of what is "necessary" does not amount to a detailed listing of specified factual findings which, if present, mandates a certain outcome. This lack of specificity and grant of discretion to staff physicians prevents this statute from creating a constitu-

tionally protected liberty interest. Additionally, § 630.115.2 does not provide any particularized substantive standards to guide decisionmakers. The section grants a right to an impartial review without any specific requirements as to the timing or procedures to be followed regarding that review.

*Howard v. Armontrout*, 729 S.W.2d 547 (Mo.App.1987), is illustrative for comparison purposes. In *Howard*, an inmate at a Missouri correctional facility filed a § 1983 action against prison officials for violations of his civil rights as a result of his placement into segregation without a hearing in violation of § 217.375, RSMo 1986.[2] The court determined that § 217.375 did create a constitutionally protected liberty interest. 729 S.W.2d at 549. The court noted that under § 217.375, segregation of prison inmates required a prior hearing and order and such segregation could only be employed when one of four specific situations exists. Additionally, § 217.375 required a hearing after the inmate was segregated. 729 S.W.2d at 549.

In contrast, § 630.175 does not require a hearing before the patient is put into seclusion. Furthermore, there is no listing of specific findings which must be made before the patient can be placed in seclusion. Section 630.115.2 does state that a patient shall have a right to a review of violations under Chapter 630. However, there are no requirements, as in *Howard*, that the review occur within a specified time.

Many rights are created by state law without invoking federal constitutional rights. *Meis*, 906 F.2d at 369. "A violation of state law, without more, is not the equivalent of a violation of the Fourteenth Amendment." *Id.* While § 630.115.2 may create rights and

---

2. Section 217.375 was revised in 1989 and 1990. The version at issue in *Howard* stated in pertinent part:

1. An inmate who has violated any rule ... of the institution relating to the conduct ... may, after proper hearing and upon order of the chief administrative officer of the institution, be confined in an adjustment unit for a period not to exceed ten days.

2. When it is determined by the chief administrative officer of the institution that an inmate is an immediate security risk, or an inmate is ... creating sufficient disturbance to

indicate he is not in control of himself, or an inmate is physically violent, or an inmate is in urgent need to be separated from others for his own safety or that of others, the ... officer ... may transfer the inmate to an administrative segregation unit.... A hearing shall be held concerning the incident within seventy-two hours.

3. A review hearing shall be held for each inmate detained in administrative segregation thirty days after the initial period of confinement and every ninety days thereafter....

impose duties, it does not do so in the context of procedural due process under the federal Constitution. Consequently, since Bonds relies on §§ 630.175 and 630.115.2 in Counts I and II, she failed to plead a violation of a constitutionally protected liberty interest which would form the basis for recovery under 42 U.S.C. § 1983, and thus the trial court did not err in dismissing Counts I and II.

Count III of Bonds' petition alleges that Dr. Bowers violated her due process right against unreasonable restraint under the Fourteenth Amendment to the United States Constitution and Article I, Section 10, of the Missouri constitution. This is the basis for her claim under § 1983. Since Count III asserts a violation of rights by Dr. Bowers only, we need only consider whether Bonds states a claim for damages under § 1983 against Dr. Bowers.[3]

In *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the United States Supreme Court found that involuntarily committed residents of a state hospital had a constitutionally protected liberty interest under the due process clause of the Fourteenth Amendment to freedom from unreasonable bodily restraint. The Court went on to state that the liberty interest was not absolute and a court must balance the liberty of the patient against the legitimate interests of the state to protect the patient being restrained as well as other patients. *Id.* at 320, 102 S.Ct. at 2460. The Court then held that due process "only requires that the courts make certain that professional judgment in fact was exercised." *Id.* at 321, 102 S.Ct. at 2461. The Court noted that this standard was lower than either a "compelling" or "substantial" necessity test. *Id.* at 322, 102 S.Ct. at 2461.

■ Dr. Bowers claims he has qualified immunity from a suit for damages based on his alleged violations of Bonds' constitutional rights. He relies on *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), which held that public officials who allegedly violate the constitutional rights of others enjoy qualified immunity from liability for damages when their conduct satisfies the standard of "objective reasonableness." In *Harlow*, the Court stated:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. . . . [T]he judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Id.* (citations and footnotes omitted). Qualified immunity provides not only a defense from liability, but also "an entitlement not to stand trial or face the other burdens of litigation. . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). It is an immunity from suit rather than a mere defense to liability, and therefore, much of its benefit is lost if a case is erroneously permitted to go to trial. *Id.*

■ Dr. Bowers' conduct satisfied the standard of "objective reasonableness." In order to overcome the defense of qualified immunity, it is incumbent on Bonds to show "the existence of a clear, factually-defined, well-recognized right of which a reasonable [person] should have known." *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1323 (11th Cir.1989) (citation omitted). There is nothing in the record to support

---

3. It is unnecessary to consider Bonds' request for an injunction enjoining Dr. Bowers from keeping a patient in seclusion when she is not dangerous to herself or others because Bonds was transferred to St. Louis State Hospital in February, 1992. Because Bonds is no longer under Dr. Bowers' care and there has been no showing she is likely to be returned to Fulton State Hospital,

this change of circumstances renders moot any need for an injunction. *See Weiss v. Missouri Dept. of Mental Health*, 587 F.Supp. 1157, 1162 (E.D.Mo.1984) (since former patient at mental health facility had been released, and there was no substantial likelihood of returning to the facility, claim for injunctive relief with respect to administration of drugs was moot).

Bonds' contention that Dr. Bowers violated her constitutional rights by placing her in seclusion. During oral argument, Bonds' counsel suggested that such evidence was supplied by the deposition testimony of Bonds' expert witness, Dr. Jerome Peters. Bonds neglected to include this deposition in the record on appeal. However, Dr. Peters apparently testified only that Dr. Bowers should have looked in on Bonds personally instead of relying on the reports of nurses, aides, and other hospital staff members in making his decisions to continue seclusion. This does not establish that Dr. Bowers violated Bonds' constitutional rights. The fact that an expert disagrees with the method of care does not mean that the patient's constitutional rights were violated. *Society for Good Will to Retarded Children, Inc. v. Cuomo,* 737 F.2d 1239, 1248 (2d Cir.1984). To find a liberty interest violation would require proof that Dr. Bowers failed to act in an objectively reasonable fashion and the record contains no such evidence.

■ Alternatively, even if Dr. Bowers was not entitled to qualified immunity from suit, there is no evidence presented in the record showing that Dr. Bowers' decision to keep Bonds in seclusion was not an exercise of his professional judgment. In *Youngberg,* the Court held that decisions by professionals are "presumptively valid" and liability may only be imposed "when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." 457 U.S. at 323, 102 S.Ct. at 2462 (footnote omitted). In light of that standard, it has been held that the liberty interests of a legally institutionalized person "must yield to the legitimate government interests that are incidental to the basis for legal institutionalization and are only afforded protection against arbitrary and capricious government action." *United States v. Charters,* 863 F.2d 302, 305 (4th Cir.1988), *cert. denied,* 494 U.S. 1016, 110

S.Ct. 1317, 108 L.Ed.2d 493 (1990) (citations omitted).

Bonds has presented no evidence that Dr. Bowers acted in an arbitrary and capricious manner. Dr. Bowers continued Bonds' seclusion based on evidence that Bonds was exhibiting hostile and aggressive behavior, including physically confronting, then later threatening to break the neck of, a hospital aide.[4] The record does not show that this decision was the product of anything other than the honest exercise of professional judgment. Indeed, as Dr. Bowers put it:

[My] actions [with] respect to Linda Bonds' seclusion were ... based on my clinical decision of what was going on with her[,] ... my knowledge of her, her behavior in the past, her current behavior and just her history in general. .... [A]ll of a sudden, she seemed to be escalating, and then she comes up with the physical contact and a threat to kill someone. And here's a woman who's here because she's accused of murdering another person, her child. It puts you in a difficult decision. But somebody's got to make the decision.

■ Finally, we note that in her reply brief, Bonds asserts for the first time that Dr. Bowers did not base his decision to continue Bonds' seclusion on professional judgment in that he violated certain departmental regulations relating to records required to be made in the event of seclusion, or its continuance. An argument made for the first time in a reply brief does not present an issue for appellate review. *Wulfing v. Kansas City S. Indus., Inc.,* 842 S.W.2d 133, 160 (Mo.App. 1992). Nevertheless, even if we consider these arguments, they are of no assistance to Bonds. She contends Dr. Bowers violated a regulation calling for a "clinical assessment" before use of "restraint or seclusion." However, at 9:00 a.m. on February 25, 1991 (the day after Dr. Hor commenced Bonds' seclusion), Dr. Bowers prepared a "progress note" describing her behavior and condition. The unrefuted evidence in the record reveals that this constitutes a clinical assessment. Bonds also complains that Dr. Bowers violated a

---

4. It is important to note that Bonds' seclusion was not a "disciplinary seclusion" which would require notice and a hearing before the seclusion could be enacted. *Eckerhart v. Hensley,* 475 F.Supp. 908, 928 (W.D.Mo.1979). Rather, Bonds' seclusion was a "security seclusion" based on Bonds' increasingly aggressive behavior and the fear that she might become violent and injure herself or others.

regulation requiring his orders to state why less restrictive methods were inadequate. The "Doctor's Orders–Treatment" in the record consistently reveal notations of "threatening," "aggressive," "agitated," and making "threats." We believe this demonstrates the reasons why less restrictive methods were not used. Bonds also argues that Dr. Bowers failed to record in his continuation orders the criteria for releasing Bonds. However, it is clear from the record that a discontinuance of Bonds' threats, aggressive behavior and attitude, and acceptance of responsibility for her prior actions were the release criteria. For instance, the first sentence of the progress note prepared by Dr. Bowers on the morning Bonds was released from seclusion indicated that she was "no longer hostile and threatening." And finally, Bonds claims that Dr. Bowers violated a regulation which specifies that a physician shall "observe" the patient. This regulation does not require the physician to "personally observe" the patient. To comply with this requirement, Dr. Bowers relied on the daily records and reports of and various conversations with the nurses and other hospital personnel who had direct contact with Bonds. Because the record refutes Bonds' arguments that Dr. Bowers violated departmental regulations, her contentions are without merit.

The decision of the trial court is affirmed.

All concur.