# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1702

_____

Kathleen Barbara Mayer,

                Appellant,

      v.

Countrywide Home Loans, also known
as MERS, Inc. (Mortgage Electronic
Registration Systems),

                Appellee.

\*  Appeal from the United States
\*  District Court for the
\*  District of Minnesota.

_____

Submitted: February 17, 2011
Filed: August 3, 2011

_____

Before WOLLMAN and BYE, Circuit Judges, and FLEISSIG,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

After Kathleen Barbara Mayer defaulted on her mortgage, Countrywide Home Loans (Countrywide) foreclosed on the property. Mayer filed suit, alleging that Countrywide violated Minnesota's Farmer-Lender Mediation Act (FLMA), Minnesota Statutes § 583.20-583.32 (2008), by failing to engage in mediation before foreclosure. Countrywide moved for summary judgment, and in her memorandum in opposition

_____

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri, sitting by designation.

to the motion, Mayer alleged that the mortgage was procured through fraud. The district court[2] granted summary judgment in favor of Countrywide, holding that Mayer's property was ineligible for FLMA protection and that her fraud claim was untimely and without merit. We affirm, although on a basis different from that relied upon by the district court in reaching its judgment.

## I. Background

Mayer's home is located on a 6.21-acre parcel near Glenwood, Minnesota. In 1993, she created and recorded a revocable inter vivos trust to hold the homestead parcel, along with two adjacent parcels. The two adjacent parcels comprised approximately fifty-five acres. The trust named Mayer both the trustor and the trustee. Mayer presented evidence that the three parcels—together constituting approximately sixty-two acres—had long been considered one farm.

In October 2006, Mayer contacted a local bank about refinancing her home. The bank arranged for an appraisal of the home and the parcel on which it is located. Mayer qualified for a mortgage of $156,000. According to Mayer, the bank prepared documents that transferred the parcel out of the trust and into her name, encumbered the parcel with the mortgage, and restored the encumbered parcel to the trust.[3] In late

---

[2]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, now retired.

[3]The record does not establish whether the mortgaged property was returned to the trust. The 2006 appraisals list the trust as the owner of public record, and an appraisal that Mayer commissioned in 2008 lists Mayer as the owner. In the mortgage, borrower is defined as "Kathleen B Mayer, a single person," and Mayer covenanted that she was "lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property . . . ." Some post-mortgage property tax statements were addressed to the trust. For the purposes of our decision, it does not matter whether the encumbered property was restored to the trust.

November 2006, the closing was held and Mayer signed the mortgage and promissory note in favor of the bank. Shortly thereafter, the bank assigned the loan servicing rights to Countrywide. After payment of closing costs and other debts, Mayer realized a net cash payment of $141,034.91. The adjacent parcels were not subject to the mortgage.

Mayer defaulted on the loan in May 2007. In September, Countrywide commenced foreclosure proceedings and in October purchased the property at the sheriff's sale for the outstanding mortgage amount. Six months after the sheriff's sale, on the day the redemption period ended, Mayer commenced this action.

The complaint pleaded a violation of the FLMA. The opening paragraph alleged that Mayer "brings this action under the Farmer Lender Mediation Act, to secure preliminary and permanent injunctive relief, rescission of contracts, restitution, disgorgement, and other equitable relief for the Defendant's fraudulent acts or practices in connection with the lending and foreclosure practices in connection with said alleged mortgage." Mayer's motion for a preliminary injunction was denied.

After the deadline for amending pleadings had passed, Countrywide moved for summary judgment. Thereafter, discovery closed and Mayer filed her response to Countrywide's motion, alleging that the mortgage was procured through fraud. The district court granted summary judgment in favor of Countrywide. Mayer continues to live on the homestead parcel.

## II. Discussion

We review *de novo* the district court's grant of summary judgment, viewing the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Rakes v. Life Investors Ins. Co. of Am., 582 F.3d 886, 893 (8th Cir. 2009). Summary judgment is appropriate if there are no

genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## A.  FLMA

The FLMA stays foreclosure proceedings against qualified debtors to allow them an opportunity to mediate any dispute with their creditors.  See Minn. Stat. § 583.26 subd. 5.  For the statute to apply, Countrywide must be a creditor.  § 583.24 subd. 1.  Countrywide satisfies the FLMA definition if it is "the holder of a mortgage on agricultural property."  § 583.22 subd. 4.  It is undisputed that Countrywide is the holder of the mortgage, and thus we must determine whether the Mayer's debt is a "mortgage on agricultural property."  As relevant here, agricultural property means "real property that is principally used for farming," § 583.22 subd. 2, and farming means "the production of (1) agricultural products; (2) livestock or livestock products; (3) milk or milk products; or (4) fruit or horticultural products," § 500.24 subd. 2.

Viewing the evidence in the light most favorable to Mayer, the record fails to create a genuine issue of material fact that the 6.21-acre parcel is "principally used for farming," as defined in the FLMA. Mayer contends that the parcel is a farm homestead and that it "is necessarily agricultural property for the purposes of storing equipment, tools, and materials necessary for farming." Appellant's Reply Br. at 5. Mayer cites to an appraiser's description of her pole shed, which Mayer argues is "a typical 32 x 30 pole shed for purposes of storing farm equipment and tools, despite the lender's appraisers calling it a 2-car 'detached garage' with a 'dirt floor.'"  The homestead parcel, however, is not principally used for the production of agricultural

products; it is a residence, and the pole shed comprises only 720 square feet of the 6.21-acre[4] parcel.

We look only to the mortgaged property to determine whether Mayer's debt is a mortgage on agricultural property. § 583.22 subd. 4 ("'Creditor' means the holder of a mortgage on agricultural property . . . ."). Accordingly, the two adjacent parcels are not included in this inquiry. Mayer's showing that she farms small grains on part of the sixty-two acres, raises three to five head of cattle, and has had less than $20,000 in annual gross sales of agricultural products is thus insufficient to survive summary judgment because the record does not support the assertion that the encumbered homestead parcel is principally used for farming.[5] Cf. Rengstorf v. Richards, 417 N.W.2d 138, 140 (Minn. Ct. App. 1987) (affirming conclusion that 133-acre parcel did not qualify for protection under the FLMA because "[o]nly 25 acres were baled, and the value of that harvest was minimal" and because "the property's value as a residence exceed[ed] the value of its agricultural production").

---

[4]One acre is 43,560 square feet. See American Heritage Dictionary of English Language 16 (4th ed. 2000) (defining the word "acre").

[5]We disagree with the dissenting opinion's contention that Mayer never had the opportunity to address whether Countrywide was a creditor. As set forth above, that determination turns on whether Countrywide is a "holder of a mortgage on agricultural property," see § 583.22 subd. 4, meaning that the homestead parcel "is principally used for farming," see § 583.22 subd. 2. It has always been Mayer's position that the encumbered parcel constitutes agricultural property and is principally used for farming. See Appellant's Reply Br. at 5 ("Throughout this litigation, Mayer has asserted the property at issue is agricultural property and the record clearly supports this assertion."). Despite her assertion to the contrary, we conclude that "none of the evidence which has been submitted by Plaintiff, supports a finding that her Homestead is principally used for farming.'" See Countrywide Mot. for Summ. J. at 9 (quoting Report and Recommendation of then-Chief United States Magistrate Judge Raymond L. Erickson of June 4, 2008, at 27.).

We are also not convinced that the encumbered parcel is the sort of property the FLMA was designed to protect. The purpose of the FLMA was to prevent "the loss of [debtors'] farmland, equipment, crops, and livestock through mortgage and lien foreclosures" by ensuring that farmers first had the opportunity to engage in mediation with their creditors. Minn. Stat. § 583.21. Foreclosure of the homestead parcel does not constitute a loss of farmland, equipment, crops, or livestock.

## B. Fraud

Mayer has failed to plead with particularity the circumstances constituting fraud, as required by Federal Rule of Civil Procedure 9(b), and thus summary judgment in favor of Countrywide was appropriate.

> [To plead fraud,] the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. . . . In other words, the complaint must plead the who, what, where, when, and how of the alleged fraud.

Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009) (citations omitted). Mayer's complaint's mere mention of fraud in its opening paragraph did not satisfy Rule 9(b)'s particularity requirement. See id. ("[Rule 9(b)'s] higher degree of notice is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." (quoting United States ex rel. Joshi, 441 F.3d 552, 556 (8th Cir. 2006)); see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) ("Though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." (citation omitted)). Moreover, although Mayer had been put on notice that the complaint had failed to state a claim for fraud, she did not move for leave to amend. See Report and Recommendation of then-Chief United States Magistrate Judge Raymond L. Erickson of June 4, 2008, at 10 n.3 ("Countrywide correctly observed that Mayer's Complaint does not plead fraud

with specificity, as required by Rule 9, Federal Rules of Civil Procedure."), adopted by D. Ct. Order of Sept. 29, 2008.  Although she argued at a pretrial hearing that the lender engaged in fraud to avoid the strictures of the trust, Mayer did not allege in writing the circumstances of the fraud until her response to the motion for summary judgment, which was filed well after the deadline to amend the pleadings had passed and after discovery had closed.  Accordingly, the grant of summary judgment in favor of Countrywide was appropriate.

## III.  Conclusion

The judgment is affirmed.

BYE, Circuit Judge, dissenting.

The majority affirms the district court's grant of summary judgment by concluding Countrywide was not a creditor within the meaning of Minnesota's Farmer-Lender Mediation Act (FLMA).  Countrywide never raised or relied upon that issue, however, in its motion for summary judgment in the district court.  Nor did the district court grant summary judgment on that ground.  Indeed, appellant Kathleen Mayer has never had the opportunity to address whether Countrywide qualifies as a creditor under the FLMA, because Countrywide's status as a creditor was also never raised or addressed by the parties on appeal.  I would not resolve this appeal on an issue Mayer never had the opportunity to address, and therefore respectfully dissent.

In the district court, Countrywide's summary judgment motion focused solely on Kathleen Mayer's status as a debtor within the meaning of the FLMA. Countrywide bore the burden of proving there were no genuine issues of material fact about whether Mayer qualified as a debtor.  Countrywide failed to demonstrate such in the district court or this court.  Our review of the improvident grant of summary judgment should be limited to that issue.

"Issue[s] not presented to the trial court will not be considered on appeal." Hall v. Gus Constr. Co., 842 F.2d 1010, 1016 (8th Cir. 1988); see also Johnson v. Sawyer, 120 F.3d 1307, 1316 (5th Cir. 1997) ("Although we can affirm a summary judgment on grounds not relied on by the district court, those grounds must at least have been proposed or asserted in that court by the movant."). "A litigant should not be surprised on appeal by a final decision there of issues upon which they had no opportunity to introduce evidence." Stafford v. Ford Motor Co., 790 F.2d 702, 706 (8th Cir. 1986) (citing Hormel v. Helvering, 312 U.S. 552, 556 (1941)).

We never gave Mayer notice we were considering an issue not raised in Countrywide's motion for summary judgment, or afforded her the opportunity to present argument as to whether Countrywide qualifies as a creditor under the FLMA. When a district court grants summary judgment on a ground not raised in a summary judgment motion without giving the opposing party notice and an opportunity to respond, we reverse. See Am. Red Cross v. Cmty. Blood Ctr. of the Ozarks, 257 F.3d 859, 863 (8th Cir. 2001) ("[T]he district court's *sua sponte* grant of summary judgment on issues not raised in the movant's motion for summary judgment constitutes reversible error."); Figg v. Russell, 433 F.3d 593, 597 (8th Cir. 2006) ("Sua sponte orders of summary judgment will be upheld only when the party against whom judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted.") (internal quotation marks omitted). On appeal, we should give Mayer the same notice and opportunity to respond.

Furthermore, our discretion to consider an issue for the first time on appeal should only be exercised "where the proper resolution is beyond any doubt," Sanders v. Clemco Indus., 823 F.2d 214, 217 (8th Cir. 1987), or where "no additional evidence or argument would affect the outcome of the case." Universal Title Ins. Co. v. United States, 942 F.2d 1311, 1315 (8th Cir. 1991). This is not such a case.

The district court held Mayer did not own enough agricultural property to qualify for the protection of the FLMA. The district court determined Mayer could not combine the acreage of two parcels of agricultural property adjacent to her residential parcel with the acreage of her residential parcel to reach the threshold amount of sixty acres required under Minn. Stat. § 583.24, subd. 2(b). The district court concluded Mayer could not add the adjacent parcels because Mayer held the adjacent properties in trust, and therefore was not the owner. That conclusion is wrong. Mayer owned the adjacent properties because the properties were held in trust and she was the trustee. See Swenson v. Nickaboine, 793 N.W.2d 738, 744 (Minn. 2011) ("It is a basic principle of trust law that a trustee holds legal title to trust property.").

The majority skirts this obvious error by the district court and instead concludes Countrywide is not a creditor under the FLMA, even though Mayer may be a debtor entitled to the Act's protection. I am concerned about interpreting the FLMA in such a way that a creditor may not be subject to the Act even where the debtor qualifies for its protection, because such a conclusion seems contrary to the the Act's intent. See Minn. Stat. § 645.17 (indicating courts should presume the Minnesota "legislature does not intend a result that is absurd, impossible of execution, or unreasonable"). As Mayer noted on appeal, "in defining debtors who qualify for the protection of the FLMA, the [Minnesota] Legislature incorporated definitions from section 500.24, which sets forth a purpose of keeping families on their farms." Appellant's Brief at 22. See Minn. Stat. § 500.24, subd.1 ("The legislature finds that it is in the interests of the state to encourage and protect the family farm . . . .").

The majority's interpretation of the Act allows creditors to avoid application of the FLMA when the encumbered property is only the parcel on which the family farm residence is located, and not farmland. For a debtor to qualify for protection under the Act, however, not all of the debtor's farmland must be subject to the creditor's mortgage; the FLMA requires only that the debtor own and lease sixty acres or more

-9-

(or for smaller farms have at least $20,000 in gross sales of farm products the preceding year). Minn. Stat. § 583.24, subd. 2(b). In addition, the clear intent of the Act is to protect a certain class of debtors, among them persons who reside on a family farm. See Minn. Stat. §§ 583.24, subd. 2(a)(1) & 500.24, subd. 2(b) (defining a "family farm" as "an unincorporated farming unit owned by one or more persons *residing on the farm* or actively engaged in farming") (emphasis added). The majority's interpretation of the Act is inconsistent with this stated legislative purpose.

I cannot bring myself to adopt the majority's interpretation of the FLMA without at least allowing the parties the opportunity to appropriately inform us on that issue. I therefore respectfully dissent.

_____