# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2792

_____

Carmen Austell; T.Y.B.E. Learning Center

*Plaintiffs - Appellants*

v.

Kimberly Sprenger; Kathy Quick; Joseph P. Bindbeutel; Shelley Truesdale;
Nimrod T. Chapel Jr.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 17, 2012
Filed: August 22, 2012

_____

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

Carmen Austell owned and operated T.Y.B.E. Learning Center, L.L.C. (collectively, TYBE), a daycare center in St. Louis, Missouri. After the Missouri Department of Health and Senior Services (DHS) denied TYBE's license renewal request, TYBE sued several DHS employees and a state administrative law judge,

alleging federal civil rights and state law violations. In July 2011, the district court[1] granted summary judgment against TYBE on all claims. TYBE appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND
### A.    Facts

DHS is responsible for licensing and regulating Missouri childcare facilities. See Mo. Rev. Stat. § 210.221. DHS licenses only those facilities that pass an inspection, and licenses cannot be issued for longer than two years. See id. § 210.221.1(1). A licensed facility must apply to renew its license at least sixty days before the license expires. See Mo. Code Regs. Ann. tit. 19, § 30-62.052(1). Childcare facilities in Missouri generally may not operate without a license. See Mo. Rev. Stat. § 210.211.

Before denying a license renewal application, DHS must provide written notice to the licensed facility stating the basis for the proposed denial. See Mo. Rev. Stat. § 210.245.2. The licensed facility may request a hearing before an administrative hearing commission (commission). See id. If the licensed facility so requests, DHS must file a complaint with the commission within ninety days. See id. DHS may immediately suspend the license if DHS finds "that there is a threat of imminent bodily harm to the children in care." Id. § 210.245.4. Otherwise, DHS first proposes to suspend or revoke a license, or to deny a license renewal request. See id. § 210.245.2. After DHS has proposed to deny a license renewal request, Missouri law does not state whether a licensed facility may continue to operate under an expired license during the pendency of the administrative review period.

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

The Missouri administrative code also contains generally applicable licensing dispute resolution provisions. See Mo. Rev. Stat. § 621.015-.250. These provisions apply to multiple agencies, including DHS. See id. § 621.045. Under these provisions, when a covered entity proposes to revoke, suspend, impair, or fails to renew a business license, the agency or the licensed facility may file a contested case with the commission, and under certain circumstances the licensed facility is entitled to an "initial settlement offer" from the commission. See id. at §§ 621.045.1, 621.045.4(1), 621.120. Missouri law is unclear how the provisions of § 621.015-.250 relate with the statutory provisions specifically governing licensed childcare facilities contained in § 210.199-.259.

At all relevant times, DHS employed Kathy Quick, Kimberly Sprenger, and Shelley Truesdale (collectively, DHS defendants). Quick served as administrator of the section for childcare regulation; Sprenger was the DHS legal coordinator; and Truesdale was a childcare facility specialist.

TYBE was a licensed childcare facility in the St. Louis area. TYBE predominately served low-income families, for which TYBE received substantial subsidies from the Missouri Department of Social Services (DSS). The Missouri Child Care Resources and Referral Network (MOCCRRN) kept a referral database that referred parents to licensed childcare facilities such as TYBE.

DHS initially licensed TYBE in August 2003. DHS identified significant compliance issues with TYBE as early as September 2004 and held facility review conferences with TYBE in September 2004 and July 2007 to discuss the importance of regulatory compliance. Nevertheless, DHS renewed TYBE's license in 2005 and 2007. DHS inspected TYBE in September and October 2007, July and December 2008, and April 2009, and identified significant compliance issues on each inspection. TYBE timely filed to renew its 2007 license, which expired on July 31, 2009.

On August 24, 2009, DHS notified TYBE, DSS, and MOCCRRN that DHS was denying TYBE's renewal request and TYBE could no longer operate under its former license. The notices stated DHS was

> denying the renewal of the license for: (a) exceeding staff child ratios; (b) using unapproved caregivers; (c) exceeding license limitations; (d) failing to supervise children appropriately; (e) recordkeeping non-compliances; (f) failing to follow transportation rules; (g) failing to serve meals according to licensing rules; and (h) failing to provide hygiene supplies in the restrooms.

In response to the notice, DSS halted its subsidy payments to TYBE. DSS also notified parents receiving DSS subsidies to stop placing their children with TYBE, and MOCCRRN removed TYBE from its referral database. TYBE had no opportunity to challenge the proposed denial before the notices went out.

In a letter dated August 26, 2009, TYBE requested an administrative hearing under Mo. Rev. Stat. § 210.245 regarding the denial. On September 2, 2009, TYBE filed a petition for administrative review, pursuant to Mo. Rev. Stat. § 621.120, naming DHS and DSS respondents. DHS moved to dismiss TYBE's § 621.120 petition for lack of jurisdiction. The administrative hearing commissioner, Joseph P. Bindbeutel, granted the motion and dismissed TYBE's complaint.

### B.    Procedural History

On September 16, 2009, TYBE filed suit in federal district court against Commissioner Bindbeutel, administrative hearing Commissioner Nimrod T. Chapel Jr., Quick, Sprenger, and Truesdale, seeking a temporary restraining order and a preliminary injunction prohibiting DHS from interfering with TYBE's operations until the commission issued a final decision on DHS's proposed denial. TYBE also requested damages under 42 U.S.C. § 1983 and state law, claiming (1) the DHS defendants deprived TYBE of due process by requiring TYBE to cease operating as

a childcare facility "prior to the completion of the administrative and/or judicial review process"; (2) the DHS defendants deprived TYBE of due process by failing to make an initial settlement offer to TYBE under Mo. Rev. Stat § 621.045.4; (3) the DHS defendants and Commissioner Bindbeutel deprived TYBE of due process by interfering with TYBE's right to initiate a hearing under Rev. Mo. Stat. § 621.120; and (4) the DHS defendants tortiously interfered with TYBE's business relationships by announcing to state agencies and TYBE's clients that TYBE was unlicensed and ineligible to provide services or receive subsidy payments.

The district court entered a temporary restraining order on September 21, 2009, and, by consent of the parties, entered a preliminary injunction on October 8, 2009. On March 18, 2010, the commission held a hearing pursuant to Mo. Rev. Stat. § 210.245. The commission denied TYBE's renewal request on January 28, 2011. The district court lifted the preliminary injunction on May 9, 2011, and on July 19, 2011, granted summary judgment to the DHS defendants and Commissioner Bindbeutel on all of TYBE's claims. This appeal followed.

## II.   DISCUSSION

On appeal, TYBE argues the district court erred in granting summary judgment on its 28 U.S.C. § 1983 due process claims and its state-law tortious interference claim. We review de novo the district court's grant of summary judgment, affirming if "the record, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." S & A Farms, Inc. v. Farms.com, Inc., 678 F.3d 949, 952 (8th Cir. 2012) (quoting Morrison Enters., LLC v. Dravo Corp., 638 F.3d 594, 602 (8th Cir. 2011)); see Fed. R. Civ. P. 56(a) (amended in 2010 to "genuine dispute").

**A.      Due Process Deprivation - Closure Order**

TYBE asserts DHS denied TYBE due process by interfering with TYBE's business operations and announcing to third parties that TYBE was operating without a license, before providing TYBE notice and an opportunity to respond. See U.S. Const. amend. XIV. In order to sustain a due process claim and overcome qualified immunity, TYBE must demonstrate (1) DHS's actions interfered with TYBE's constitutionally protected liberty or property interest; and (2) the DHS defendants reasonably should have known their actions violated TYBE's clearly established constitutional rights. See Pearson v. Callahan, 555 U.S. 223, 231 (2009); Putnam v. Keller, 332 F.3d 541, 546 (8th Cir. 2003).[2]

**1.      Property Interest**

TYBE asserts the DHS defendants unconstitutionally interfered with the property interest TYBE had in its license and the license renewal proceedings. TYBE is entitled to relief only if it has evidence sufficient to prove (1) TYBE had a clearly established constitutionally protected liberty or property interest in the license renewal; and (2) DHS's procedures deprived TYBE of that interest. See Putnam, 332 F.3d at 546.

To have a constitutionally cognizable property interest in a right or a benefit, a person must have "a legitimate claim of entitlement to it." See Bd. of Regents of

_____

[2]TYBE argues the district court committed reversible error by predicating its summary judgment decision on an argument the movants did not raise—namely, that TYBE lacked a protectable interest because its license had expired. See Mayer v. Countrywide Home Loans, 647 F.3d 789, 793-94 (8th Cir. 2011) (Bye, J., dissenting). We need not resolve this argument. The district court also decided the DHS defendants were protected by qualified immunity because TYBE failed to demonstrate the DHS defendants violated a clearly established constitutional right. The DHS defendants raised this defense in their motion for summary judgment, and we decide this case on that basis.

State Colleges v. Roth, 408 U.S. 564, 577 (1972).  The Due Process Clause does not create any property interest; it merely protects property rights arising "from an independent source such as state law."  Id.  A property interest arises when state law creates "expectations that are 'justifiable.'"  O'Bannon v. Town Ct. Nursing Ctr., 447 U.S. 773, 796 (1980) (quoting Vitek v. Jones, 445 U.S. 480, 489 (1980)).  No property interest arises where the statutory claim to a benefit is "too ephemeral and insubstantial."  Id. (quoting Meachum v. Fano, 427 U.S. 215, 228 (1976)) (internal quotation marks omitted).

TYBE has not demonstrated it had a clearly established property interest in renewal of its license.  Under Missouri law, a licensed entity may have a property interest in an existing valid license, which may not "be impaired, suspended, or revoked" without due process.  Mo. Real Estate Comm'n v. Rayford, 307 S.W.3d 686, 692 (Mo. App. 2010); see ARO Sys. v. Supervisor of Liquor Control, 684 S.W.2d 504, 507 (Mo. App. 1984) (recognizing sanctions impairing the licensed entity's use of a valid liquor license implicate due process protections); Crum v. Mo. Dir. of Revenue, 455 F. Supp. 2d 978, 986 (W.D. Mo. 2006) (determining revocation of a physician's license implicated due process protections).  Missouri law is less clear when it comes to license *renewal* proceedings.  See, e.g., Zenco Dev. Corp. v. City of Overland, 843 F.2d 1117, 1118-19 (8th. Cir. 1988) (holding the district court did not err in determining a licensed entity had no due process rights attendant to liquor license renewal proceedings under Missouri law); State ex rel. Garrett v. Randall, 527 S.W.2d 366, 373 (Mo. 1975) (en banc); Vaughn v. Ems, 744 S.W.2d 542, 547-48 (Mo. Ct. App. 1988); State ex rel. Payton v. City of Riverside, 640 S.W.2d 137, 142 (Mo. Ct. App. 1982).  TYBE has not cited, nor have we found, any statutes or cases establishing that licensed facilities have a property interest in a license renewal under Missouri law.

We have decided analogous cases under the laws of other states.  Our cases indicate this is a highly context-specific inquiry we decide on a case-by-case basis.

Compare Stauch v. City of Columbia Heights, 212 F.3d 425, 429-30 (8th Cir. 2000) (deciding the district court did not err in finding a licensed rental unit operator had a protected property interest in license renewal where Minnesota law required the licensing authorities to renew "if: (1) [the licensed entity] completed an application form; (2) paid the registration fee; and (3) the property had been inspected within the previous two years"), with Movers Warehouse, Inc. v. City of Little Canada, 71 F.3d 716, 719 (8th Cir. 1995) (declaring a licensed bingo hall operator had no protected property interest in license renewal where the municipal code gave licensing authorities unfettered discretion to deny a license renewal application).

The standard for renewing a daycare license in Missouri falls somewhere between these precedents. DHS only may deny a license renewal application for cause. See Mo. Rev. Stat. § 210.245(2) (requiring DHS to state the basis for a license denial); Mo. Code Regs. Ann. tit. 19, § 30-62.052(4) ("Upon determination of the applicant's continued compliance with state statutes and licensing rules for group daycare homes and daycare centers, an official license shall be granted for up to two (2) years.").

However, the applicable statutes and regulations governing DHS's licensing determination are broad, subjective, and give the department substantial discretion to determine violations. See Mo. Rev. Stat. § 210.221.1(2) (providing DHS may "deny, suspend, place on probation or revoke the license of such persons as fail to obey the provisions of sections 210.201 to 210.245 or the rules and regulations made by [DHS]"). DHS regulations for the operation of childcare facilities are extensive, governing everything from fire safety and disaster preparedness, see Mo. Code Regs. Ann. tit. 19, § 30-62.087-.090, to nutrition and food service, health care, and medical examination reporting requirements, see id. §§ 30-62.122, .192-.202. While many of these requirements are relatively specific and objective, others are entirely subjective. See, e.g., id. §§ 30-62.082(1)(A) ("The premises shall be safe and suitable for the care of children"), 30-62.102(1)(A) ("Day care personnel shall be of good character and

intent and shall be qualified to provide care conducive to the welfare of children"). DHS has far greater discretion to deny license renewal applications than did the licensing agency in Stauch, where we recognized a property interest in license renewal. See Stauch, 212 F.3d at 429-30.

The DHS defendants reasonably could have concluded TYBE had no constitutionally protected property interest in the renewal of its license, and such a conclusion entitles them to qualified immunity. See Ambrose v. Young, 474 F.3d 1070, 1077 (8th Cir. 2007) (explaining, public officials are entitled to qualified immunity unless their actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known") (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (internal quotation marks omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Id. (quoting Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)) (internal quotation marks omitted).

Qualified immunity is particularly appropriate in this instance because the DHS defendants were operating under conflicting statutory directives. DHS was required under Mo. Rev. Stat. § 210.245(2) to give TYBE notice and, upon TYBE's request, a hearing. However, TYBE's license expired on July 31, 2007, and Mo. Rev. Stat. § 210.211.1 explicitly prohibited TYBE from operating a childcare facility without a license "in effect." Once TYBE's license expired, DHS could not provide TYBE with pre-deprivation notice—the license expired by operation of law—while simultaneously enforcing the licensing requirement. We cannot say the DHS defendants' attempt to resolve this foggy statutory conflict was constitutionally unreasonable.

### 2. Liberty Interest

TYBE also claims the DHS defendants violated TYBE's liberty interest in its reputation by disclosing to third parties the non-renewal decision and announcing

TYBE had violated the laws and regulations governing licensed childcare facilities. We recognized in Kloch v. Kohl, 545 F.3d 603, 607-09 (8th Cir. 2008), that injury to a licensed professional's reputation is insufficient to sustain a due process liberty claim. See Conn. Dep't of Public Safety v. Doe, 538 U.S. 1, 6-7 (2003). "Rather," we explained, "a plaintiff must demonstrate that he has been deprived of some benefit to which he has a 'legitimate claim of entitlement.'" Kloch, 545 F.3d at 607 (quoting Roth, 408 U.S. at 577). As discussed above, it was reasonable for the DHS defendants to conclude, after TYBE's license expired, TYBE was unlicensed and subject to closure. If TYBE had a legitimate claim of entitlement to operate during the revocation review period, this right was not clearly established, and any injury to TYBE's reputation, by itself, would not trigger any protectable liberty interest. The DHS defendants are entitled to qualified immunity regarding the challenged statements.

### B.    Due Process Deprivation - Failure to Make a Settlement Offer

TYBE claims the DHS defendants deprived TYBE of due process by failing to make an "initial settlement offer" to TYBE in conjunction with the license denial review proceedings, as required by Mo. Rev. Stat. § 621.045.4(1).

TYBE erroneously concludes it had a property interest in receiving a settlement offer. We previously stated,

> If a state law gives me the right to a certain outcome in the event of the occurrence of certain facts, I have a right, by virtue of the Fourteenth Amendment, to whatever process is due in connection with the determination of whether those facts exist. This is not at all the same thing as saying that the federal Constitution guarantees me all rights created or conferred upon me by state law. Such a doctrine would turn every state-law violation into a substantive due process claim, a result that would obliterate completely the distinction between state law and the federal Constitution.

-10-

Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993). Even assuming TYBE had a state law right to a settlement offer, there was no constitutionally cognizable property interest in the offer itself. The settlement offer is a state conferred procedural safeguard which is not enforceable under the federal Constitution's Due Process Clause. See id.

### D.    Deprivation of Right to Judicial Process

TYBE argues the DHS defendants and Commissioner Bindbeutel[3] interfered with TYBE's constitutional due process right to judicial process when Quick moved to dismiss TYBE's § 610.120 administrative complaint and Commissioner Bindbeutel granted the motion. TYBE argues the dismissal of its complaint was "the equivalent of denying them an opportunity to be heard upon their claimed right[s]." Logan v. Zimmerman Brush Co., 455 U.S. 422, 429-30 (1982) (quoting Boddie v. Connecticut, 401 U.S. 371, 380 (1971)) (internal quotation marks omitted). TYBE further claims the DHS defendants are liable because Quick's motion to dismiss "subverted TYBE's procedural due process rights."

The constitutional right to judicial process is violated when the state "destroy[s] a property interest without first giving the putative owner an opportunity to present his claim of entitlement." Logan, 455 U.S. at 434. TYBE had a full and fair opportunity to adjudicate all of its claims. TYBE's claims were addressed on the

---

[3]TYBE seeks only "prospective, permanent injunctive relief" to prevent Commissioner Bindbeutel and his successors from dismissing future § 610.120 complaints filed by TYBE or anyone else. We lack jurisdiction over this claim because it is not ripe. An issue is ripe for review only where there is "a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." Neb. Pub. Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032, 1037-38 (8th Cir. 2000) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)) (internal quotation marks omitted). This "dispute" is, at this time, purely "hypothetical [and] abstract," and not ready for our review.

merits in the administrative review proceeding initiated by DHS under § 210.245. An administrative law judge, other than Commissioner Bindbeutel, accepted written arguments from the parties, presided over a hearing on TYBE's claims, and issued a twenty-eight page opinion addressing the merits of TYBE's claims. TYBE was not deprived of any due process rights by Quick's motion to dismiss TYBE's complaint.

### E.    Tortious Interference with Business Expectancy

TYBE claims Quick and Sprenger tortiously interfered with TYBE's business expectancy. TYBE alleges Quick and Sprenger showed a "callous and reckless disregard for [TYBE]'s business expectancy" when DHS issued the notice of denial, interfering with TYBE's business relationship with DSS and MOCCRRN.

TYBE's tortious interference claim fails as a matter of law. In Missouri,[4] public officials exercising discretionary duties, as opposed to ministerial duties, are entitled to official immunity from suit for "all discretionary acts" unless the officials acted "in bad faith or with malice," which ordinarily requires "actual intent to cause injury." State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446-47 (Mo. 1986) (en banc).

> [T]he decision as to whether a public official's acts are discretionary or ministerial must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity.

Kanagawa v. State by and through Freeman, 685 S.W.2d 831, 836 (Mo. 1985) (en banc); see also Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. 2008) (en

---

[4]"We apply Missouri law to [TYBE]'s state-law claims," which come under our "supplemental jurisdiction." Walker v. Barrett, 650 F.3d 1198, 1203 (8th Cir. 2011); see also 28 U.S.C. § 1367.

banc) (explaining discretionary duties are those that require the application of reasoned decision-making, whereas ministerial functions are "of a clerical nature . . . perform[ed] . . . without regard to [the official's] judgment or opinion concerning the propriety of the act to be performed") (quoting Kanagawa, 685 S.W.2d at 836).

In this case, Quick's and Sprenger's actions were discretionary, not ministerial. This is not a "clerical" task capable of being performed "without regard to [Quick's and Sprenger's] judgment or opinion." Southers, 263 S.W.3d at 610. Decisions regarding how or when to enforce a perceived license violation "involve policymaking [and] the exercise of professional expertise and judgment," and withholding official immunity would likely hamper DHS's license enforcement actions in the future. Kanagawa, 685 S.W.2d at 836.

On appeal, TYBE has made no effort to demonstrate Quick and Sprenger acted "in bad faith or with malice" and with "actual intent to cause injury" required to overcome official immunity. See Twiehaus, 706 S.W.2d at 446-47. Nor did TYBE make this argument in opposing the DHS defendants' summary judgment motions below. It is far from clear on this record that TYBE's allegations and evidence would support a finding of bad faith or malice, and particularly an actual intent to injure TYBE. The Missouri Supreme Court has affirmed a claim's dismissal where the plaintiff failed to demonstrate the public official's bad faith and therefore the plaintiff could not overcome official immunity. See Charron v. Thompson, 939 S.W.2d 885, 887 (Mo. 1996) (en banc). Quick and Sprenger are entitled to official immunity.[5]

---

[5]We reject TYBE's argument that official immunity does not apply because Quick's and Sprenger's actions were not within their legitimate discretion because they violated the Constitution. In Southers, the Missouri Supreme Court, sitting en banc, clarified that public employees do not lose official immunity merely because their discretionary actions violated statutory duties or formal department policies. Southers, 263 S.W.3d at 614-17. We believe the Missouri courts would apply this rule to alleged constitutional violations as well.

TYBE argues the district court committed reversible error by granting summary judgment based on an issue not addressed in the DHS defendants' motion for summary judgment. However, "we may uphold a grant of summary judgment for any reason supported by the record, even if it differs from the reason given by the district court." Watson v. O'Neill, 365 F.3d 609, 614 (8th Cir. 2004). "This power should normally be exercised only where the issue is one of law, no factual questions are outstanding that might affect its resolution, and there is no reason to believe that we would benefit from giving the opportunity to the District Court to address the question in the first instance." Reeder v. Ks. City Bd. of Police Comm'rs, 733 F.2d 543, 548 (8th Cir. 1984); see also Johnson v. Sawyer, 120 F.3d 1307, 1316 (5th Cir. 1997) ("Although we can affirm a summary judgment on grounds not relied on by the district court, those grounds must at least have been proposed or asserted in that court by the movant.").

At summary judgment, the DHS defendants argued they were entitled to official immunity because TYBE failed to demonstrate they acted in bad faith or with malice, citing Southers, Kanagawa, and Twiehaus. TYBE had a full and fair opportunity to address this argument, but did not do so. Cf. Mayer v. Countrywide Home Loans, 647 F.3d 789, 792 & n.5 (8th Cir. 2011) (affirming summary judgment for reasons different than those relied upon by the district court where the non-moving party had the opportunity to address the issue in the district court). The district court did not err.

## III.    CONCLUSION
We affirm the district court's summary judgment.

_____