# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-1312

———————————————

Joseph Wagner

*Plaintiff - Appellant*

v.

Lisa Scheirer; Randall Hukriede; Scott Schroeder; Rachel Studanski

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: November 20, 2024
Filed: February 14, 2025
[Unpublished]

——————————

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

——————————

SHEPHERD, Circuit Judge.

For years, cattle farmer Joseph Wagner and Minnesota Pollution Control Agency (MPCA) officials have disputed whether Wagner's cattle operation violates state pollution laws. In 2023, Wagner sued MPCA officials in United States District Court for the District of Minnesota, alleging that the officials improperly withheld a feedlot permit modification from him in violation of the Due Process Clause and improperly penalized him in retaliation for protected First Amendment activity. The

district court granted the officials' motion to dismiss, and Wagner now appeals. We agree with the district court that Wagner failed to state a claim for relief on his due process claim, but we hold that Wagner sufficiently pled his First Amendment retaliation claim. Thus, having jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse and remand in part.

I.

Wagner owns two separate cattle farming operations in Minnesota. The first is a cow/calf operation aimed at breeding, and the second is an animal feedlot operation aimed at raising cows until they can be sold for processing. Wagner's cow/calf operation takes place in several pastures around Minnesota, while his feedlot operation takes place in feedlots in Minnesota.

Notably, animal feedlots and pastures are not the same under Minnesota law. Feedlots generally use lots and buildings to house animals, while pastures are open grazing areas. See Minn. R. 7020.0300, subp. 3, subp. 18. The key distinction between the two is the amount of vegetative cover; feedlots are not required to maintain any vegetative cover, while pastures must generally maintain vegetative cover during the growing season. See id. at subp. 3, subp. 18.

This distinction is significant because Minnesota feedlots are subject to stricter regulations than pastures. See Minn. Stat. § 116.07 subd. 7(h). Under Minnesota law, the MPCA has the authority to adopt permitting requirements for feedlots, but not for pastures. Id. Permitting requirements for feedlots are intended to minimize manure runoff into water sources; pastures are exempt from the rules that feedlots are subject to because the vegetative cover of pastures slows the discharge of manure into water. See Livestock and the Environment: MPCA Feedlot Program Overview, MPCA (Jan. 2021), https://www.pca.state.mn.us/sites/default/files/wq-f1-01.pdf.

The distinction between feedlots and pastures under Minnesota law has been at the center of multiple feuds between Wagner and the Appellees (collectively Scheirer).[1] In two instances in 2014 and 2015, Scheirer accused Wagner of violating certain laws and regulations applicable to animal feedlots and imposed penalties on him. Both times, Wagner denied the violations and disputed Scheirer's authority to regulate the properties—maintaining that they were pastures, not feedlots—but ultimately entered into agreements with Scheirer and paid a portion of the penalties to avoid costly legal fees.

In late 2016, after initially obtaining a permit to modify and expand his existing animal feedlot, Wagner applied for a permit to make additional modifications. Wagner's proposed modifications were subject to a published notice and comment period and received no comments. Normally, in the absence of comments, the MPCA issues a modified permit within 40 days of the end of the comment period. But if "there exists at the facility to be permitted unresolved noncompliance," the MPCA may refuse to issue a modified permit. See Minn. R. 7001.0140 subp. 2.B. Scheirer claimed there was unresolved noncompliance involving Wagner's cow/calf operation, which Appellees had discovered during an inspection on the last day of the comment period. Scheirer imposed a penalty on Wagner for the noncompliance and withheld issuance of the permit pending resolution. Wagner denied the violations and asserts that even if there were any unresolved compliance, it was at his cow/calf operation, which was not the *facility to be permitted* for purposes of state law. See Minn. R. 7001.0140 subp. 2.B. Wagner disputed the alleged noncompliance with Scheirer for nearly a year and a half until October 2018, when he sought a writ of mandamus from Ramsey County District Court to compel MPCA to issue the permit. The following month, Scheirer issued the permit. Wagner claims Scheirer's 18-month delay in issuing the permit

---

[1]Appellees are Lisa Scheirer, Supervisor of the MPCA's West Feedlot Unit; Randall Hukriede, Program Manager of the MPCA's Feedlot Program; Scott Schroeder, Environmental Specialist with the MPCA's West Feedlot Unit; and Rachel Studanski, Compliance Coordinator with the MPCA's Feedlot Program. Appellees were sued in their individual capacities.

caused him to lose nearly half a million dollars in financial assistance and resulted in significant cost increases associated with the project.

Around 2019, after years of quarreling with Scheirer over whether parts of his cattle farming operation were pastures or animal feedlots, Wagner petitioned the Minnesota Legislature for clarification of the applicable statutes. The Minnesota Legislature responded by modifying the statutory definition of "pastures" in alignment with Wagner's broader interpretation.

Two years later, in March 2021, the MPCA filed an action in county court seeking to impose a $152,724 civil penalty against Wagner for new alleged violations within his feedlot operation. Internal MPCA documents show that in discussions about this potential penalty against Wagner, Wagner was identified as "the individual behind the legislation last year that added to the definition of pasture." If imposed, the penalty will be the largest the MPCA has ever imposed against an animal feedlot and one of only four penalties greater than $50,000 imposed against feedlots in MPCA history.

In April 2023, Wagner sued Scheirer in United States District Court for the District of Minnesota asserting claims under federal and Minnesota law. Count 1 alleges Scheirer deprived Wagner of due process by withholding issuance of his permit modification for a year and a half. Count 2 alleges Scheirer retaliated against Wagner for his constitutionally protected activities in violation of the First Amendment by imposing a record-breaking penalty after Wagner contested Scheirer's authority, challenged the 2014 and 2015 penalties, and petitioned the Minnesota Legislature to expand its definition of pasture.[2]

---

[2]Count 3 alleges tortious interference with prospective economic advantage under Minnesota law. After dismissing Counts 1 and 2, the district court declined to exercise supplemental jurisdiction over this claim. Wagner did not appeal the court's ruling on Count 3.

Scheirer filed a motion to dismiss, which the district court granted based on Wagner's failure to plausibly allege the constitutional claims. The court determined that Wagner did not sufficiently plead the due process claim because he failed to plausibly allege that he had a protected property interest in the permit modification. As to the First Amendment retaliation claim, the district court determined the allegations did not plausibly allege causation between Wagner's protected activity and the imposition of the penalty.

II.

We review the grant of a motion to dismiss de novo and accept the allegations contained in the complaint as true. LaCoe v. City of Sisseton, 82 F.4th 580, 583 (8th Cir. 2023).

"To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face.""" Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))). Such a complaint requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). Though the Court must accept the plaintiff's allegations as true, "[t]his tenet does not apply . . . to legal conclusions or 'formulaic recitation of the elements of a cause of action.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Iqbal, 566 U.S. at 678). The question at this stage is "whether [the plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." Whitney, 700 F.3d at 1129. "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and "that a recovery is very remote and unlikely."'" Braden, 588 F.3d at 594 (quoting Twombly, 550 U.S. at 556). Furthermore, this Court does not require any evidence at the pleading stage. Whitney, 700 F.3d at 1128.

A.

Wagner argues that the district court erred in dismissing his due process claim. He asserts primarily that he had a property interest in the permit modification and that Scheirer violated his due process rights by withholding the permit. Scheirer responds that Wagner did not have a property interest in the permit modification and that Wagner failed to allege when the deprivation occurred and what process he was due.

To state a claim of violation of procedural due process rights, Wagner must allege (1) that a "protected liberty or property interest is at stake," and (2) that Scheirer "deprived him of such an interest without due process of law." See Elder v. Gillespie, 54 F.4th 1055, 1064 (8th Cir. 2022) (citation omitted).

To have a protected property interest, a person must have "a legitimate claim of entitlement to it." Austell v. Sprenger, 690 F.3d 929, 935 (8th Cir. 2012) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). When the claimed property interest is in a license or a permit, this Court considers whether the scheme "limits the [government agency's] discretion" to issue or deny the permit or license. See Stauch v. City of Columbia Heights, 212 F.3d 425, 430 (8th Cir. 2000). The more "substantive limitations on the exercise of official discretion" that there are, the more likely the scheme creates a property interest. See Movers Warehouse, Inc. v. City of Little Canada, 71 F.3d 716, 719 (8th Cir. 1995) (citation omitted); see also Stauch, 212 F.3d at 429-30 (finding a property interest where the city had no discretion to deny renewal if applicants made a showing of "three objective criteria"); Austell, 690 F.3d at 936 (finding no property interest where the standards governing licensing determination were "broad, subjective, and [gave] the department substantial discretion to determine violations").

Here, Wagner did not plausibly allege a property interest because Scheirer has substantial discretion over the permitting standards. See Austell, 690 F.3d at 936. The MPCA is required to issue a permit if (1) the agency determines the proposed

permittee will comply with the applicable statutes and rules pertaining to the facility or activity to be permitted, and (2) the agency does not make any of the eight potential findings that justify denial, such as that the proposed permittee will not comply with the statutes and rules or has a currently unresolved noncompliance at the facility. Minn. R. 7001.0140. The agency has discretion as to both conditions; it exercises its authority to determine whether a given application satisfies these subjective requirements. Unlike in Stauch, where applicants were only required to "meet three *objective* criteria to qualify," Wagner must meet multiple *subjective* criteria to receive the permit. See 212 F.3d at 430 (emphasis added). Wagner has not alleged "more than a unilateral expectation" of the permit, and thus does not possess "a legitimate claim of entitlement to it." See id. at 429.

Because Wagner did not plausibly allege that a protected liberty or property interest is at stake, Wagner's procedural due process claim fails. We therefore need not reach the remainder of the parties' disputes on this issue.

B.

Wagner also argues that the district court erred in dismissing his First Amendment retaliation claim. He asserts he plausibly alleged causation between his protected activity and Scheirer's retaliation by highlighting that Scheirer specifically noted that he petitioned the Legislature in discussions about the penalty, by pointing out the "heightened regulatory scrutiny the MPCA subjected his operations to," and by marking a temporal connection between his protected conduct and Scheirer's alleged retaliation. See Appellant Br. 25-26.

To state a claim for First Amendment retaliation, a plaintiff must allege that "(1) he engaged in a protected activity; (2) [the] defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated in part by plaintiff's exercise of

his constitutional rights." Rowles v. Curators of Univ. of Mo., 983 F.3d 345, 357 (8th Cir. 2020) (citation omitted). Only the causation prong is at issue here.[3]

To prevail on causation at the motion-to-dismiss stage, a plaintiff must plausibly allege "a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" Aldridge v. City of St. Louis, 75 F.4th 895, 899 (8th Cir. 2023) (quoting Nieves v. Bartlett, 587 U.S. 391, 398 (2019)). The protected activity "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." Nieves, 587 U.S. at 399. Causal connection is "generally a jury question" unless "the question is so free from doubt as to justify taking it from the jury." Graham v. Barnette, 5 F.4th 872, 889 (8th Cir. 2021) (citation omitted).

Wagner points to two alleged retaliatory actions: (1) withholding his permit and (2) issuing a penalty against him. As to the permit withholding, his only allegations of causation are "the heightened regulatory scrutiny the MPCA subjected his operations to" and "the timing of the MPCA's adverse actions against him." As to the penalty, Wagner also alleged that internal MPCA documents show Schierer was motivated by his protected speech.

We hold that Wagner plausibly alleged causation as to the penalty, but not as to the permit withholding. Wagner's primary allegation of causation between his protected conduct and the permit withholding was temporal proximity. This Court has recognized "temporal proximity between protected activity and an adverse employment action can contribute to establishing [causation]." Davison v. City of Minneapolis, 490 F.3d 648, 657 (8th Cir. 2007). However, the greater the passage of time between the protected conduct and the adverse action, the weaker the

---

[3]The district court determined that Scheirer had acknowledged Wagner engaged in a protected activity. The district court further determined that "withholding a permit for over a year and initiating a lawsuit seeking over $150,000 in penalties is enough to chill a person of ordinary firmness." Scheirer did not dispute either of these determinations on appeal.

inference of retaliation becomes. Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 986 (8th Cir. 2011). "The inference vanishes altogether when the time gap . . . is measured in months." Id. Here, Scheirer did not begin withholding the permit modification until May 2017, at least seven months after Wagner's most recent protected conduct.[4] Thus, the temporal proximity was insufficient to allege causation as to this claim. See Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d 641, 645 (8th Cir. 2009) (holding that a seven-month gap was not close enough to establish causation).

Wagner's allegation of retaliation as to the penalty, however, contained more than mere temporal proximity. In discussing a potential penalty against Wagner, Scheirer specifically noted at least one of Wagner's constitutionally protected activities, his petitioning of the Minnesota Legislature. The Amended Complaint states:

> According to the MPCA's internal documents that the agency produced in the state-court action, [Appellees] and other employees of the MPCA based their decision to commence the state-court action and to seek to impose against Mr. Wagner the largest penalty the agency has ever imposed against an animal feedlot on the fact that Mr. Wagner had exercised his legal right to appeal prior administrative penalties the agency had sought to impose against him and the fact that Mr. Wagner "is the individual behind the legislation last year that added to the definition of pasture."

---

[4]Wagner alleges his protected conduct included disputing the MPCA's authority, contesting and defending against enforcement actions, and refusing to enter into a Stipulation Agreement and pay a monetary penalty. These activities presumably ceased when Wagner entered into a Settlement Agreement and paid a portion of the penalty. Thus, his protected conduct responding to the 2014 alleged violation ceased when he entered into a Stipulation Agreement with the MPCA in February 2015, and his protected conduct responding to the 2015 alleged violation ceased when he entered into a Settlement Agreement with the MPCA in October 2016. October 2016 was seven months before May 2017.

Though Wagner did not produce the internal MPCA documents at issue, he was not required to. See Whitney, 700 F.3d at 1128 (noting that this Court does not require any evidence at the pleading stage). He did, however, quote the document directly and describe its context—that it was used by the MPCA in a document pertaining to the penalty against Wagner. Wagner's allegations here are more than mere "formulaic recitation[s] of the elements of a cause of action." See Braden, 588 F.3d at 594 (citation omitted). They show that Scheirer made note of Wagner's protected activity while taking an adverse action against him. Given the "deferential" nature of the motion-to-dismiss standard, see Norgren v. Minn. Dep't of Hum. Servs., 96 F.4th 1048, 1055 (8th Cir. 2024), Wagner's Amended Complaint sufficiently alleged causation.

This conclusion is reinforced by the remainder of the facts Wagner pled. The 42-page Amended Complaint alleges that Scheirer had been imposing—and Wagner has been contesting—penalties on Wagner for years without resolving the underlying disputes. It also alleges that Wagner sought clarification from the Minnesota Legislature, received clarification that supported his interpretation of the rules, and was later subjected to the largest animal feedlot penalty in MPCA history. While this on its own may be insufficient to allege a causal link, we recognize that the Amended Complaint's "chronology" of events supports Wagner's "circumstantial claim of retaliatory action." See L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, 673 F.3d 799, 809 (8th Cir. 2012).

Wagner was only required to allege that Scheirer's improper motive was *a* but-for cause of Wagner's injury, not that it was the *sole* cause. See Rowles, 983 F.3d at 357 (stating that First Amendment retaliation claims require the plaintiff to show "the adverse action was motivated *in part by* plaintiff's exercise of his constitutional rights" (emphasis added)). "Often, events have multiple but-for causes," so it is possible that Scheirer had legitimate and retaliatory motives for taking the adverse action, and that both motives were but-for causes of the action. See Bostock v. Clayton Cnty., 590 U.S. 644, 656 (2020). Recognizing the difficulty of pleading direct evidence of retaliatory intent, see, e.g., Kilpatrick v. King, 499

-10-

F.3d 759, 769 (8th Cir. 2007) ("We are not unsympathetic to the plight of plaintiffs who bring retaliation claims that require proof of a wrongful motive, the evidence of which may be elusive or nonexistent."), we hold that Wagner alleged just enough to allow an inference of retaliatory intent. The district court thus erred in dismissing Wagner's First Amendment retaliation claim as to the penalty.

## III.

For the foregoing reasons, we affirm the district court's decision to dismiss Wagner's due process claim. We furthermore find that Wagner has sufficiently pled a First Amendment retaliation claim regarding the proposed penalty against him so as to survive a motion to dismiss for failure to state a claim, but has not sufficiently pled the same claim regarding the permit withholding. Accordingly, we reverse the district court's dismissal of Wagner's retaliation claim and remand to the district court for further proceedings.

_____